Willard BARRETT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16197.

United States Court of Appeals Eighth Circuit.

Oct. 16, 1959.

Willard Barrett, pro se.

Fallon Kelly, U. S. Atty., and Clifford Janes, Asst. U. S. Atty., St. Paul, Minn., for appellee.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

Willard Barrett, the appellant, is presently confined in the Minnesota State Penitentiary where he is serving a sentence of not less than five nor more than twenty years for the unlawful possession, on or about the 29th day of April, 1958, of a narcotic drug commonly known as marijuana. Concurrently with the Minnesota sentence, the appellant is serving a sentence of fifteen years imposed February 4, 1959, by the United States District Court for the District of Minnesota upon a plea of guilty to Count 1 of an indictment charging the transfer, on or about January 14, 1958, in violation of the provisions of 26 U.S.C.A. § 4742, of 38.12 grains of marijuana to one Henry L. McDuffie. This is an appeal from the judgment of conviction and sentence. Appellant appears *pro se* and has filed with this court his statement of the case and a brief in support of his various contentions. Additionally, we have received and examined the original files of the District Court and have read the transcript of all the proceedings from the time of the appellant's first appearance until the time of this appeal.

On April 29, 1958, the appellant was arrested by a police officer of the City of Minneapolis, Minnesota. Since that date he has been at all times in the custody of the State of Minnesota, either in the Hennepin County Jail or the State Penitentiary. His appearances in federal court were in response to Writs of Habeas Corpus Ad Prosequendum. No charge is made here that the state custody was improper or illegal. In other words, there is nothing to indicate that the appellant's rights were violated in respect to his confinement by the Minnesota authorities.

On May 2, 1958, an information was filed against the appellant in the state court of Minnesota charging him with having, on or about the 29th day of April, 1958, unlawful possession of marijuana. On May 5th, appellant entered a plea of not guilty. He was held without bail and tried before a jury, the trial commencing on September 29, 1958. On October 1, 1958, the jury returned a verdict of guilty and the defendant was, on October 14, 1958, sentenced, in accordance with the Minnesota statutory requirements, to a period of imprisonment of not less than five nor more than twenty years.

On May 23, 1958, while the appellant was in the custody of the Minnesota state authorities in the Hennepin County Jail, a federal complaint was issued against him charging violation of 21 U.S.C.A. § 176a, in the concealment, transfer and sale of 65.7 grains of marijuana on February 6, 1958. A warrant was issued for the appellant's arrest but was never executed. On June 4, 1958, the appellant was indicted by a federal grand jury on 12 counts of narcotic violations. On June 10, 1958, appellant was presented with a copy of such indictment; however, no attempt was made by the federal government to arraign the defendant at that time. On September 3, 1958, two indictments were returned against the appellant charging him with violations of the White Slave Traffic Act, 18 U.S.C.A. §§ 2421, 2422. Under and pursuant to a Writ of Habeas Corpus

Ad Prosequendum the appellant appeared in United States District Court on September 19, 1958, to answer to the white slave indictments. He was without counsel and was advised of his rights. Thereupon, Mr. V. O. Nelson, an attorney of Minneapolis, Minnesota, was appointed to represent him. Appellant appeared again in court on September 23, 1958, at which time it appeared that Mr. Nelson had been appointed to represent him only in the white slave cases and that counsel knew nothing about the narcotics indictment. Mr. Nelson was then designated to represent the appellant also in connection with the narcotics indictment. At the same time, the appellant, through his court-appointed counsel, entered a plea of not guilty to each of the white slave charges. Arraignment on the narcotics indictment was continued to give counsel an opportunity to familiarize himself with that situation.

On November 14, 1958, appellant again appeared in court, accompanied by Mr. Nelson, and changed his plea of not guilty to the first white slave charge to one of guilty; whereupon government counsel advised the court that at the time of sentencing the government would move for a dismissal of the second white slave indictment. The appellant was then arraigned on Count 1 only of the narcotics indictment. To that count he pleaded guilty. The transcript then indicates the following:

"The Court: Mr. Segell.

"Mr. Segell: Your Honor, I understand that in the matter of Willard Barrett that the defendant desires to change his plea both in 458 Criminal 72, which is an indictment on narcotics offense and desires to change his plea on 458 Criminal 99 which is a white slave offense.

"The Clerk: He has not been arraigned on the first case.

"Mr. Segell: Not been arraigned on 72. That matter is for arraignment this morning. The other matter is for change of plea. The government would move arraignment on 4-58 Criminal 72 on Count 1 only.

May the record show the defendant appears in Court with his counsel, V. O. Nelson. This matter is for arraignment and the government moves that arraignment.

"The Court: He may be arraigned.

"Mr. Segell: Count 1 only.

"The Clerk: Your true name is Willard Barrett, (spelling) B-a-r-r-e-t-t?

"Defendant Barrett: Yes.

"The Clerk: Your age please?

"Defendant Barrett: 42.

"The Clerk: United States of America vs. ———

"Mr. Nelson: We will waive the reading except for the Count 1, is that all read? I would like to have that part read. (The Clerk reads Count 1 of the indictment.)

"The Clerk: What is your plea then to this Count 1 of the indictment, guilty or not guilty?

"Defendant Barrett: Guilty.

"The Clerk: A plea of guilty, Your Honor.

"The Court: You talked that over with Mr. Nelson, your lawyer, have you?

"Defendant Barrett: Yes. I have.

"The Court: You are satisfied that's what you want to do?

"Defendant Barrett: Yes, sir.

"The Court: A guilty plea may be entered.

"Mr. Segell: May the record show, Your Honor, at the time of sentence the Government will move for dismissal of Counts 2 through 12 in this same indictment?

"The Court: Very well.

"Mr. Segell: If we may take up the matter of change of plea on the white slave charge which is 4-58 Criminal 99."

Thereafter a discussion appears between Mr. Nelson, the appellant, the United States Attorney and the court with refer-

ence to the change of plea on the first of the white slave charges wherein it is made clear that such action had been previously discussed by the appellant with his attorney. Sentencing upon both the narcotics violation and the white slave charge was deferred to allow the court to receive further information on the appellant relevant thereto.

Appellant next appeared in court on February 4, 1959, again accompanied by counsel. The court was fully advised of the Minnesota sentence which the appellant was then serving. Further, during the interim between the entering of the pleas of guilty and February 4, 1959, the appellant had written the sentencing judge a letter setting forth his views with reference to his sentencing. The court was also in possession of a presentence investigation report by the Probation Officer. After full opportunity was given to counsel and to the appellant himself to make such statements as they desired, the court imposed a sentence of 15 years on Count 1 of the narcotics indictment and specifically provided that it should run "concurrently and not consecutively with the sentence that the defendant is now serving in the Minnesota State Prison at Stillwater, Minnesota." In the white slave case, the court imposed a sentence of five years " * * * to be served at the termination of the service of the imprisonment imposed on * * * " the narcotics charge. Thereafter, within ten days, the appellant filed with the clerk of the District Court a letter which was and is construed as a notice of appeal from the 15-year sentence imposed in the narcotics case. Subsequently, on March 9, 1959, the appellant, accompanied by court-appointed counsel, appeared in the District Court before Judge Devitt, before whom all prior proceedings had been held. A hearing was then held upon appellant's motion to prosecute his appeal *in forma pauperis* and upon his request to receive a free transcript of the prior proceedings in the trial court. In this hearing the appellant's main complaint was the inadequacy of court-appointed counsel.

Both motions were denied and the court filed a certificate in support of its denial stating that the appeal was not taken in good faith. At the conclusion of those proceedings appellant was advised as to his rights on appeal to this court and it was specifically explained to him that, in connection with his appeal, he could ask this court to appoint counsel to assist him. The record shows no such request.

Appellant complains here that he was held without any formal charges being presented against him until May 23, 1958; that he was denied the right to bail; and that he was held without an appearance before a commissioner or any other committing magistrate, all allegedly in violation of his right to due process and contrary to the provisions of the Federal Rules of Criminal Procedure, particularly Rules 4(a) and 5(a). F.R. Cr.P., 18 U.S.C.A.

■■ What appellant overlooks is the fact that during the entire proceedings from the time of his arrest on the state charge on April 29, 1958, to the present he was and is in state custody. It is true enough that on May 23, 1958, while the appellant was in state custody a complaint against him was filed and a warrant for his arrest was issued by a United States Commissioner. That warrant, however, remains unexecuted. It is further true that on June 4, 1958, a federal grand jury returned a 12-count indictment against the appellant, charging narcotic violations, and that no preliminary hearing had been held prior to that indictment or at any other time. The purpose of a preliminary hearing is to determine whether or not there is probable cause to believe that an offense has been committed and that the defendant has committed it. If the Commissioner so finds, the defendant is then held to answer in the District Court. There is, however, no requirement in the Constitution or otherwise that a defendant be given a preliminary hearing before he may be brought into a court already having jurisdiction of the charge against him. Davis v. United States, 8 Cir., 1954, 210 F.2d 118, 120. Here, the appel-

lant had been indicted. Further, he was in state custody at the time awaiting trial in state court. No purpose would have been served by a preliminary hearing. United States ex rel. Dilling v. McDonnell, 7 Cir., 1942, 130 F.2d 1012, 1013.

In Barber v. United States, 4 Cir., 1944, 142 F.2d 805, 807, the court stated:

"There is nothing in the point that the prisoner was not granted a preliminary hearing or given sufficient time to prepare his defense. The only purpose of a preliminary hearing is to determine whether there is sufficient evidence against an accused to warrant his being held for action by a grand jury; and, after a bill of indictment has been found, there is no occasion for such hearing. Appellant here was informed of the charge against him well in advance of trial and neither he nor his lawyer requested a continuance to prepare his defense."

In United States ex rel. Bogish v. Tees, 3 Cir., 1954, 211 F.2d 69, 72, it was said:

"The relator complains that he was denied a preliminary hearing before a United States Commissioner. But when he was indicted in the district court he was a prisoner in a Pennsylvania state jail. He had not previously been arrested on the federal charge. It is settled that an accused may be indicted without prior arrest or commitment by a commissioner.[1] If this is done there is no right to or occasion for a preliminary hearing before a commissioner. The relator's contention that he was denied a hearing before a commissioner is, therefore, wholly without merit."

■ It is, of course, not required that a person charged with a federal offense be in federal custody during the proceedings against him. The appellant was personally present at all times as required by Rule 43, F.R.Cr.P., but he was not in federal custody. A Writ of Habeas Corpus Ad Prosequendum had been directed to the state authorities who had and retained custody of the appellant, albeit they recognized the writ and complied therewith.

■ The appellant also claims that the court lacked jurisdiction " * * * in that no dismissal was effected of subject's prior commitment and function to state authorities." This is not a case involving conflicting claims by the State of Minnesota and the United States to the custody of the appellant. There has been no interference whatsoever by the federal government with the Minnesota authorities. The Minnesota authorities saw fit to recognize the writ issued by the United States District Court and accordingly the appellant was made available for arraignment, plea and sentence in the federal court. Appellant has no right to complain on such score.

■ Appellant's next contention is that he was placed in double jeopardy through prosecution and punishment under both the federal and state statutes. Count 1 of the indictment, to which the appellant entered a plea of guilty and upon which he was sentenced, charged that on or about the 14th day of January, 1958, the appellant did transfer 38.12 grains more or less of bulk marijuana to Henry L. McDuffie, said transfer not being in pursuance to a written order form. The Minnesota state court prosecution was based on a narcotics violation occurring on or about the 29th day of April, 1958, consisting of Barrett's possession and control of marijuana contrary to state law. Obviously, they are two separate offenses. It may well be, as suggested by the United States Attorney, that Counts 10 and 11 of the indictment did include some of the same

1. United States ex rel. Kassin v. Mulligan, 1934, 295 U.S. 396, 400, 55 S.Ct. 781, 79 L.Ed. 1501; Garrison v. Johnston, 9 Cir., 1939, 104 F.2d 128, 130; O'Grady v. Hiatt, D.C.M.D.Pa.1943, 52 F.Supp. 213, affirmed 3 Cir., 1944, 142 F.2d 558; United States v. Liebrich, D.C.M.D.Pa. 1932, 55 F.2d 341; United States v. Gray, D.C.1949, 87 F.Supp. 436.

acts or transactions for which the appellant was charged in state court, but such counts were dismissed upon appellant's plea of guilty to Count 1 and sentencing thereon. Additionally, the point would not be well taken even if the offenses were the same. Abbate v. United States, 1959, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729; United States v. Lanza, 1922, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314.

 Appellant's next contention is that he was denied equal protection and due process because of the inadequacy of his court-appointed counsel. Appellant's plea of guilty to Count 1 of the narcotics indictment was entered only after the court had assured itself that he had talked the matter over with counsel and that that was what he wanted to do. Appellant was a man experienced in criminal court matters; he had previously been convicted of two federal offenses and had served 8 or 9 years in federal penitentiaries; he indicated familiarity with statutory punishment for narcotics violations; he took it upon himself to write to the sentencing judge regarding his punishment and omitted any complaint about the representation he had received. Thus, at no time during the proceedings did he question the adequacy of counsel or indicate dissatisfaction in any way with the manner in which his case was being handled. It was not until subsequent to the imposition of a 15-year sentence to run concurrently with the state sentence that the appellant decided his counsel was inadequate and that his rights had been prejudiced. At a hearing in District Court on March 9, 1959, appellant for the first time indicated dissatisfaction with his counsel. In reply to appellant's complaint, the Trial Judge stated:

> "I am fully satisfied and state my confidence in Mr. Nelson that he has done a splendid job and has been derelict in no respect at all."

It would seem quite apparent that the complaint of inadequacy of counsel was born in the mind of appellant immediately after receiving a sentence of 15 years

upon Count 1. Nothing in the record justifies the slightest doubt that Mr. Nelson represented the appellant adequately and well. The charge to the contrary here is groundless.

The last claim of error is that the appellant's rights were violated by the trial court's refusal to grant a transcript at government cost. Whatever basis there may have been for such complaint, and we indicate none, it is no longer present. A complete transcript of the proceedings was served upon the appellant at the Minnesota State Penitentiary, Stillwater, Minnesota, on August 14, 1959. We have the original transcript before us as well as the original files of the District Court. We have examined them with care and do not find that appellant's rights were in any way violated.

Affirmed.