John Richard **BAYLESS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21059.

United States Court of Appeals Ninth Circuit.

July 19, 1967.

John R. Bayless, in pro. per.

Eugene G. Cushing, U. S. Atty., Tacoma, Wash., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and HAMLEY and BROWNING, Circuit Judges.

MADDEN, Judge:

The appellant was convicted in the United States District Court on two counts of an indictment, the details of which will be recited hereinafter. He has appealed, asserting that in the proceedings leading to his conviction many errors were committed.

On April 28, 1952, the appellant was convicted in the United States District Court for the Southern District of California of armed bank robbery, and of interstate transportation of stolen property. He was sentenced to an aggregate term of 35 years in prison. He was committed to the custody of the Attorney General and on May 6, 1952, was delivered by the United States Marshal to the federal penitentiary at McNeil Island, in the State of Washington. On July 10, 1952, the Federal Bureau of Prisons, acting for the Attorney General, transferred the appellant to the federal penitentiary at Alcatraz, California. On January 11,

1963, the same agency transferred him back to the McNeil Island penitentiary.

All of McNeil Island is owned by the federal government, which makes no use of it except as the site of the prison. Only the area where the main prison institution stands, and which is enclosed by a fence, is guarded. Three buildings in the main institution are connected by a tunnel in which there are three gates operated by a prison guard. On November 8, 1965, in the evening, the appellant and one Dennis Hubbard, who in the instant case was tried and convicted jointly with the appellant in the district court, and who also appealed but later dismissed his appeal, gained access to the tunnel gate complex, overpowered the guard, taped his hands through the bars, gagged him, took his keys, and escaped through the tunnel to a minimum security building. From there they apparently climbed over the fence to the unguarded part of the island where they were able to hide for several days.

The government maintains homes on the island for some of the prison officials. On November 10 a prison doctor who occupied one of these homes left his home, with his son, for a hunting trip, intending to be away for several days. That night the appellant and Hubbard entered the doctor's house through a kitchen window. They remained in the house until the morning of November 13, 1965, at which time the doctor and his son returned, discovered the presence of the intruders and notified the prison. Prison officials then recaptured the prisoners and returned them to confinement.

On March 9, 1966, the appellant and Hubbard were jointly indicted on three counts. Count one charged them with the crime of "escape," in violation of § 751 of Title 18 of the United States Code. Count two charged them with assault, committed during their escape, in violation of §§ 111 and 1114 of Title 18 of the Code. Count three charged them with burglary of the doctor's home, in violation of § 9.19.020 of the Revised Code of Washington, which provision had been assimilated into federal law by § 13 of Title 18 of the United States Code. The appellant and Hubbard were tried before a jury, were convicted of escape, charged in count one, were acquitted of assault, charged in count two, and were convicted of burglary, charged in count three. Each was sentenced to five years' imprisonment on each conviction, the sentences to be consecutive to each other and consecutive to any terms of imprisonment which the prisoner were then serving.

Both appellant and Hubbard appealed their convictions. As stated above, Hubbard has dismissed his appeal. The appellant has prosecuted his appeal in pro. per. The district court offered to appoint counsel for him for his appeal, but he declined the offer, and has written and submitted his own brief.

■ Appellant, after his recapture on November 13, 1965, was not taken before a United States Commissioner "without unnecessary delay," or, indeed, at all. He was indicted on March 9, 1966, nearly four months after his recapture. In the meantime he was interrogated by officials of the prison. He urges that failure of his custodians to take him before a Commissioner was a violation of Rule 5(a) of the Federal Rules of Criminal Procedure, and we will assume that it was, even under the unusual circumstances of the appellant's situation. He urges that the doctrine laid down by the Supreme Court in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819 (1943) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479 (1957), is applicable in his case. He does not make clear what advantage he thinks he should have because of the violation of Rule 5(a). All that McNabb, and Mallory, decided was that confessions or admissions obtained from a prisoner during a period of unnecessary delay could not be used as evidence against him at his trial. In the instant case no such evidence was obtained by the government. The McNabb-Mallory doctrine has no application. Nor, for the same reason, can the appellant obtain any advantage from the Supreme Court's decisions in Esco-

bedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), upon which he relies. There having been no evidence which could have been excluded, on motion, on these grounds, the appellant's motion was to dismiss the indictment. That motion was correctly denied.

■■ The appellant urges as error that he was denied the right to a preliminary hearing. We have pointed out that the defendant was not prejudiced by the government's violation, which we have assumed, of Rule 5(a) of the Federal Rules of Criminal Procedure. After he was indicted, he had no right to a preliminary hearing. Probable cause for holding him for trial had been found by the grand jury. United States v. Salliey, 360 F.2d 699 (CA 4, 1966); Byrnes v. United States, 327 F.2d 825, 834 (CA 9, 1964), cert. den. 377 U.S. 970, 84 S.Ct. 1652, 12 L.Ed.2d 739.

■■ The appellant contends that he was denied his statutory right, under § 1654 of Title 28, United States Code, to conduct his own case. A defendant has such a right and it is not only a statutory right but a constitutional right. United States v. Plattner, 330 F.2d 271 (CA 2, 1964). But the appellant was not denied this right. In the pretrial stage of the case appellant represented himself but retained counsel to advise him on procedure for filing motions, of which he filed many. The court insisted that the counsel be in court during these motion proceedings, but only to give advice if the appellant requested it. Appellant dismissed that counsel prior to the trial. The court gave appellant the opportunity to obtain other counsel for the trial, but appellant did not do so. The court then appointed counsel but made it clear that this counsel would participate in the trial only to the extent that appellant desired. Appellant said that he wanted counsel to fully represent him, except that he himself was to have the right, after his counsel had cross-examined witnesses, to himself further cross-examine them. The

court permitted this unusual arrangement, the appellant expressed his complete agreement with it, it was followed throughout the trial, and the appellant made no complaint about its operation. He was thus allowed to represent himself to the extent that he desired to do so. He has no valid ground for complaint in this regard.

■ The appellant contends that the joinder of the escape count and the burglary count infected the trial with unfairness. Federal Rules of Criminal Procedure, 8(a), 8(b) and 14 are relevant. Rule 8(b) relates to joinder of defendants. As we have seen, appellant and Hubbard were tried jointly. This was correct, since Rule 8(b) provides that defendants may be joined if it is alleged that they participated in "the same series of acts or transactions constituting an offense * * *."

From the appellant's motions in the trial court and his brief in this court it is apparent that he is claiming prejudicial joinder, as to which Rule 14 is the pertinent rule, and that the joinder which he claims was prejudicial was the joinder of the offenses of escape and burglary. The asserted prejudice is based upon the fact that the government's evidence, on the escape count, included evidence of his 1952 conviction for robbery, which was the reason for his being in the prison from which he escaped. We consider whether these offenses were properly joined, under Rule 8(a). That rule says that joinder may be made if the offenses are "two or more acts connected together * * *"

From our recital of the facts it appears that the act of escape and the act charged as burglary were "connected together" within the meaning of Rule 8(a). The escape made it necessary that appellant and Hubbard, in order to ultimately get off McNeil Island and disappear into the outside world, should lie low until the immediate excitement caused by their break out of close confinement should die down. They apparently hid in the woods for two nights and a day, then

discovered that the doctor's house was likely to be available for a few days for use as a comfortable and fairly safe hide-out. The event that gave them their reason, their motive, for entering the house was the escape and the fact that unless they could succeed in hiding out until they could get off the island the purpose of their escape from the prison buildings would be frustrated. Their entry into the doctor's house was not remote in time from their escape, was in the sequence of events connected with their escape, and was motivated by the fact that they were still engaged in trying to make good their escape. The offenses were suitable for joinder until Rule 8(a).

It is possible that although an original joinder of offenses or defendants is proper, the joinder may, in the circumstances, be so prejudicial as to be unfair, in which case it is within the discretion of the trial court, under Rule 14, to direct separate trials. The appellant's contention in this case is that the evidence supporting the escape count would tend to prejudice the jury and cause it to find him guilty on the burglary count. It may be noted at this point that this court has indicated, in Fernandez v. United States, 329 F.2d 899, 906 (CA 9, 1964), and in Williamson v. United States, 310 F.2d 192, 197 (CA 9, 1962), that a motion for severance under Rule 14 must be renewed at the close of the evidence in order to preserve the question for appeal. Be that as it may, we consider whether the trial court abused its discretion in not ordering separate trials on the escape and the burglary counts.

When, in a trial for one offense, evidence of another offense not involved in that trial is offered, it is usually inadmissible. But in numerous situations it is admissible because it tends to show motive, plan, identity, or some element relevant to the crime for which the defendant is on trial. And if it is importantly relevant to the issue on trial, it will not be excluded, although it almost inevitably will be prejudicial to the defendant.

In the consideration of prejudice from joinder, which appellant complains of in this case, the problem is that of weighing the prejudice against the definite advantage to the administration of justice which is achieved by disposing of two or more closely related issues in one trial. This weighing is done on a case by case basis. Smith v. United States, 357 F.2d 486 (CA 5, 1966); Williams v. United States, 265 F.2d 214 (CA 9, 1959). An important factor in determining whether prejudice exists is the answer to the question whether the evidence of one of the crimes would be admissible in a separate trial for the other crime. Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964); King v. United States, 355 F.2d 700 (CA 1, 1966). In the instant case, in a separate trial for the burglary, the escape and the events incidental to it would, we think, have been admissible in such a trial. In addition to being a natural part of the narrative as to why the alleged burglars were in the area of the burglarized house, the fact that they were there as recently escaped convicts would be admissible on the question of their motive for entering the house, and their intent in entering it. See Drew v. United States, supra, 231 F. 2d at p. 90; Stewart v. United States, 311 F.2d 109, 112 (CA 9, 1962). In a separate trial for the burglary, then, the jury would have been made aware that the appellant had committed an escape from a federal penitentiary, and would have inferred that he was in the penitentiary because he had been convicted of a crime, for which he was serving his sentence when he escaped. It may be said that that general disclosure that he was a convicted criminal would not have been as prejudicial as the disclosure, in a joint trial which included the escape count, of the nature of the appellant's 1952 conviction, that is, that it was for bank robbery. We shall see, however, that in fact in the appellant's trial, the nature of his 1952 conviction was not disclosed to the jury in his 1966 trial. That discussion appears hereinafter.

Our conclusion is that the trial court did not abuse the discretion lodged in it, by refusing to require separate trials for the offenses of escape and burglary.

The appellant attacks his conviction on the escape count on two grounds. We discuss first his assertion that the evidence of his escape was not sufficient. He does not mean that it was not adequately proved that he did, physically, overpower his guard and run away from the prison, as testified to by the guard. Valid legal evidence of the crime of escape, however, includes several elements, and the appellant says that some of them were lacking in the government's proof.

The crime of "escape" is defined in § 751 of Title 18 of the United States Code. As this section is interpreted in the decisions, the prosecution in a case in which it is charged that a convicted prisoner is guilty of an "escape", is obliged to prove a conviction, an escape, and the fact that the escape is from a confinement based upon the conviction. Strickland v. United States, 339 F.2d 866, 867 (CA 10, 1965); Hardwick v. United States, 296 F.2d 24, 26 (CA 9, 1961); Mullican v. United States, 252 F.2d 398, 402–403 (CA 5, 1958). The appellant challenges the proof of his 1952 conviction of bank robbery, and of his confinement.

We treat first of the evidence of his conviction. The government's evidence was a copy of the judgment, sentence, and commitment, and a copy of the marshal's return showing the execution of the judgment and commitment. These copies were authenticated as true copies of original documents by a writing in which a clerk of the United States District Court so certified and, further, certified that the originals of these documents were on file in his (the clerk's) office. The district judge, on the same paper on which the purported clerk of the court wrote his certificate, wrote an attestation that the person who signed the certificate was the clerk of the court. The seal of the court was affixed to this paper. These papers were offered and admitted without objection. They were

government records admissible under § 1733 of Title 28, United States Code, and under Rule 44 of Federal Rules of Civil Procedure, made applicable to criminal cases by Rule 27 of Federal Rules of Criminal Procedure. The appellant argues that the clerk's certificate did not state that the clerk had "custody" of the originals of the documents, which is required by the rules just above cited, but only stated that the originals were "on file" in the clerk's office. We think that the clerk's certificate made the copies admissible evidence, and that conviction and commitment to confinement were adequately proved.

Appellant challenges the validity of the evidence used to prove the necessary fact that he was in lawful confinement at the time of his escape. The confinement element of the crime of escape is ordinarily proved by documentary evidence. It is not necessary to present an unbroken documentary chain running from the courtroom in which a defendant was convicted to the prison from which he escaped. Strickland v. United States, supra; Hardwick v. United States, supra. It is necessary to prove that his confinement in the prison from which he escaped was pursuant to the conviction recited in the indictment. Strickland v. United States, supra. In the instant case copies of transfer orders from the Bureau of Prisons showed that the appellant had been moved from the McNeil Island prison to the Alcatraz prison, and had later been moved back to McNeil Island. The records control supervisor of the McNeil Island prison testified at the trial to the authenticity of the copies introduced in evidence. He had with him the originals, for the purpose of comparison, if that was desired. The appellant argues that what the witness called originals were in fact copies, and that the ones introduced in evidence were copies of copies. The appellant is mistaken. What the witness had with him for comparison were duplicate originals, each stamped "original" and each, according to his testimony, signed by the proper official. These documents were, under Rule 44, admissi-

ble, and were legal proof of the confinement element of the crime of escape.

■ The appellant urges that there is no proof of his identity with the person who was convicted of and sentenced for bank robbery in 1952. In fact there is much proof. The documentary evidence shows that the man with the somewhat unusual name of John Richard Bayless, who was convicted and sentenced in Southern California in 1952, had been turned over by the marshal to the McNeil Island prison authorities, had been a prisoner bearing that name there for a few months, had then been, under that name, transferred to Alcatraz where he had been confined under that name for more than ten years, had then been transferred back to McNeil Island where he continued to bear that name, until his escape and recapture. Nothing short of a fantastic cloak and dagger operation, engaged in for no conceivable reason, could have separated this person from that name. The trial court was correct in not indulging in such fantasy. This court has held that identity of a name is sufficient to establish the identity of the person in the absence of contradictory evidence. Chung Young Chew v. Boyd, 309 F.2d 857 (CA 9, 1962).

Still on the subject of the appellant's conviction on the escape count, the appellant complains that the trial judge invaded the province of the jury by giving the following instruction:

> The first element, that is, confinement by direction of the Attorney General, the Court finds and instructs you has been established as a matter of law by the exemplified judgments and sentences and official records which have been admitted in evidence in the case.

The court used the plural words "judgments" and "sentences" because, as we have said, there were at that time two defendants, appellant and Hubbard. We now consider whether the appellant is in a position, in this appeal, to complain of the alleged error in the giving of the quoted instruction. The question is whether or not he has waived whatever

right in that regard he might otherwise have had.

Again adverting to the appellant's claim of error on account of the joinder of the escape count and the burglary count in the same trial, the following events of the trial are pertinent. The appellant raised this question prior to trial. Early in the trial the court indicated that appellant's confinement, a necessary element in the proof of escape, would be charged as a matter of law in order that the nature of the conviction, bank robbery, on which the appellant was confined, would not have to be disclosed to the jury. Appellant's counsel indicated his approval. After the charge was given, the court again indicated that he had given the charge so that the documentary evidence which recited the nature of the conviction would not have to go to the jury. After counsel objected to the instruction on the ground that it invaded the province of the jury, the court said that the documentary evidence would be sent to the jury if counsel so desired. It is fair to assume, from the context, that the parties understood that the challenged instruction would be withdrawn and a different instruction given if that was what appellant's counsel desired. Counsel then withdrew his objection to the challenged instruction. The court then asked the appellant himself whether he wanted the evidence here under discussion sent to the jury. He answered that he did not.

■ In view of the foregoing colloquy at the trial, and assuming, without deciding, that the giving of the questioned instruction would have been error if that discussion had not occurred, we conclude that the statements by the appellant's counsel and the appellant himself, in response to the statements made and questions asked by the court, constituted a valid waiver of any error in the giving of the instruction now complained of.

■ Rule 23 of the Federal Rules of Criminal Procedure requires that waiver of a jury trial be in writing. This court,

in Pool v. United States, 344 F.2d 943 (1965) held that a defendant's signature on a stipulation of the facts of his case constituted adequate compliance with the rule. Rule 23 also requires that an agreement to be tried by a jury of fewer than twelve jurors be in writing. In Rogers v. United States, 319 F.2d 5 (CA 7, 1963), cert. den. 375 U.S. 989, 84 S.Ct. 524, 11 L.Ed.2d 475, and in Horne v. United States, 264 F.2d 40 (CA 5, 1959), cert. den. 360 U.S. 934, 79 S.Ct. 1460, 3 L.Ed. 2d 1549, it has been held that an oral agreement in open court is sufficient to validate a trial with such a jury. In the instant case the appellant, in order to obtain a substantial advantage for himself, knowingly and intelligently agreed that one of the several issues in the case should be decided by the court. We think he thereby validly waived whatever right he might, in the absence of that agreement, have had.

 We further think that the giving of the instruction complained of, even if it had been, in the circumstances, error, was harmless error within the meaning of the rule announced by the Supreme Court in Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court there said that except as to rights so basic to a fair trial that their infraction can never be treated as harmless error, a federal constitutional error can be held harmless if the court is able to declare a belief, beyond a reasonable doubt, that it was harmless. We can so declare with regard to the asserted error here complained of. The Government proved, by evidence which is undisputed except for the appellant's contention concerning the authentication of documents, that the appellant's confinement in McNeil Island Penitentiary was by direction of the Attorney General. We have rejected the appellant's contention that the authentication was insufficient. But even if the contention were meritorious, it relates to a matter which could be easily cured at a new trial. The appellant suffered no possible prejudice by the giving of the instruction in question.

The indictment, in count three, the burglary count, charged that the appellant:

* * * with intent to commit some crime therein and under circumstances not amounting to burglary in the first degree, did enter the dwelling house of Dr. Henry H. Kyle.

In violation of 18 U.S.C. Secs. 7 and 13; Sec. 9.19.020 of the Revised Code of Washington.

The references in the indictment to §§ 7 and 13 of Title 18 of the United States Code are to the provisions which adopt as federal law the criminal law of the state in which a federal enclave is located, if there is no federal statute applicable to the conduct involved. Section 9.19.020 of the Revised Code of Washington, referred to in the indictment, says in pertinent part:

Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling house of another * * * shall be guilty of burglary in the second degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

Section 9.19.030 of the Revised Code of Washington says, so far as here pertinent:

Every person who shall unlawfully enter any building or structure enumerated in R.C.W. * * * 9.19.020 shall be deemed to have * * * entered the same with intent to commit a crime therein, unless such * * * unlawful entry shall be explained by testimony satisfactory to the jury to have been made without criminal intent.

A common law definition of burglary is "the breaking and entering of the dwelling house of another in the nighttime with intent to commit a felony." Perkins, Criminal Law, p. 149. The author, on pages 166–168, discusses the "burglarious intent" element of the crime. It is evident from his discussion that the nam-

ing of a particular crime in the indictment might leave the prosecution, in the trial, frustrated by not having been able to convince the jury that that particular crime was intended, although the evidence shows that some other particular crime was intended. Professor Perkins says, p. 167, "At times a prima facie presumption of burglarious intent, arising from an unexplained act of breaking into another's building, has been provided by statute." At this point the author cites State v. Anderson, 5 Wash. 350, 31 P. 969 (1892).

■ In the Washington statutes, Section 9.19.010 defines first degree burglary. Section 9.19.020, the section with which we are here concerned, defines second degree burglary. Then section 9.19.030, quoted supra herein, creates the presumption, from the fact of unlawful entry, of the intent to commit "a crime" in the dwelling house, and makes the presumption applicable to both first degree and second degree burglary, "unless such unlawful breaking and entering, or unlawful entry, shall be explained by testimony satisfactory to the jury to have been made without criminal intent." Such a presumption is constitutionally valid. Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); Hunter v. United States, 339 F.2d 425 (CA 9, 1964).

■ In the instant case, the appellant did not present any evidence that he entered the doctor's house with an innocent intent. The presumption was, then, not rebutted. The Washington statute, § 9.19.030, which creates the presumption says that "an unlawful entry" gives rise to the presumption of an intent to commit "some crime." The government's indictment on the burglary count in this case did not charge an unlawful entry in the language of § 9.19.030. It charged that the appellant, "with intent to commit some crime therein and under circumstances not amounting to burglary in the

first degree, did enter the dwelling house of Dr. Henry H. Kyle."

■ An examination of the interpretation and application by the Washington courts, of the two sections of the statutes here involved shows that the word "unlawfully" in § 9.19.030 has been given no significance whatever. It is apparent, from the decisions of the Supreme Court of Washington, that an indictment for burglary charging that the defendant did unlawfully enter with intent to commit some crime imposes on the prosecution only the burden of proving an entry. It does not have to prove in what respect the entry was unlawful, nor what crime the defendant intended to commit after his entry. See State v. Murie, 140 Wash. 71, 248 P. 79 (1926); State v. Lewis, 42 Wash. 672, 85 P. 668 (1906); State v. Wilson, 9 Wash. 218, 37 P. 424 (1894). It is not difficult to see why the word "unlawfully" in § 9.19.030 has not been treated as significant. It might be almost as difficult for the prosecution to affirmatively prove the unlawfulness of the entry as to prove the intent to commit a specific crime or any crime at all after the entry. Thus section 9.19.030 would be rendered relatively useless. But these things are known to the defendant, and if he does not give an innocent explanation of them it is not unconstitutional to convict him.

■ Since the Supreme Court of Washington has so interpreted and applied its statutes, that is the law which Congress made federal law for McNeil Island, by its statute creating assimilative crimes. In these circumstances we think the omission, in the government's indictment, of the word "unlawfully," which word, in a trial in a Washington court, would, if included in the indictment, have been given no significance, should not be treated as reversible error, but rather as an omission to make a mere formal recital which, if it had been made, would mean nothing in the trial since it would not have to be proved.

The appellant asserts that there were other errors in his conviction, and speci-

fies them. We have examined his contentions and find them not worthy of discussion.

The judgment of the district court is affirmed.