**Ernest M. DAVENPORT, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. No. 67–1088.**

United States District Court
C. D. California.

Oct. 10, 1967.

Ernest M. Davenport, in pro. per.
No appearance for respondent.

HAUK, District Judge.

Petitioner, Ernest M. Davenport, a Federal prisoner, is here upon motion to vacate his judgment of conviction for bank robbery, pursuant to Section 2255 of Title 28 United States Code.[1] He

1. 28 U.S.C. § 2255:

"§ 2255. *Federal custody; remedies on motion attacking sentence*

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court

appears in propria persona, which no appearance by respondent United States.

Allowed to proceed in *forma pauperis,* Davenport seeks to vacate the judgment of conviction upon the following grounds: (1) that he was not taken before a United States Commissioner, or any such officer similarly empowered, for arraignment as required by Federal Rules of Criminal Procedure, Rule 5(a), 18 U.S.C., R.F.Crim.P., Rule 5(a); [2] (2) that he was denied representation of counsel in violation of 18 U.S.C. § 3006A; [3] and the Sixth Amendment to the Federal Constitution; [4] and (3) that for these reasons

which imposed the sentence to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

2. "Rule 5. PROCEEDINGS BEFORE THE COMMISSIONER

(a) *Appearance before the Commissioner.* An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

3. This is the Criminal Justice Act of 1964, Public Law 88–455, 78 Stat. 552, sometimes popularly known as the Federal Indigent Defense Law, which requires each District Court of the United States to place in operation a plan for furnishing counsel to indigent defendants. The Central District of California has such a plan for the United States District Court, Southern District of California, effective February 15, 1965, which was adopted and carried over by the new Central District of California upon its formation September 19, 1966, by Joint Resolution of Judges, "Statement of General Policy in re Redistricting of California".

As we shall demonstrate, counsel was appointed for defendant the very first day he appeared in Court, January 16, 1967, although we note parenthetically that defendant in a rambling account claims he was in Court on January 12 and 13, 1967—Thursday and Friday— when this Court did not and invariably does not conduct any arraignment and plea proceedings; and he also claims he was in Court on January 14 and 21, 1967 —both Saturdays—when the Court was not in session at all.

Actually he was in Court on only three specific days—all Mondays—January 16, January 23 and February 20, 1967, and each time he was fully represented by his Court-appointed counsel, Sheldon M. Jaffe, an able member of the Federal Indigent Defense Panel.

4. "CONSTITUTION OF THE UNITED STATES

ARTICLE [VI]

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the

—failure to bring him before a Commissioner and alleged denial of counsel—his plea of guilty was given under duress.

## FACTS AND PROCEEDINGS CONCLUSIVELY SHOWN BY FILES AND RECORDS

In a Complaint filed with the United States Commissioner by the Federal Bureau of Investigation on November 22, 1966, petitioner Davenport was charged along with one other defendant, Tommy Louis Lee Brown, with robbery of a national bank by use of a revolver, a dangerous weapon and device, in violation of 18 U.S.C. § 2113(a) and (d).[5] The Commissioner issued warrants of arrest, one of which was executed by the arrest of Brown on the same day the Complaint was filed, November 22, 1966, and he was brought before the Commissioner immediately, on the day of the arrest. However, Davenport could not be found and his warrant of arrest was returned and filed unexecuted one month later, on December 22, 1966.

In the meantime and in fact the day before Davenport's warrant of arrest was returned and filed unexecuted, an Indictment was returned by the Federal Grand Jury on December 21, 1966, charging Davenport and Brown with the same crime of bank robbery by use of a revolver,[6] and a bench warrant for Davenport was issued forthwith the same day.

On December 29, 1966, petitioner was located in the Los Angeles County Jail where he was serving a State sentence for traffic violations, and the bench warrant issued on the Indictment was served upon him and returned executed.

Petitioner remained in the County Jail under commitment of the United States Marshal and was brought before this Court on January 16, 1967, at which time the Court notified petitioner of his rights in the following proceedings:

"LOS ANGELES, CALIFORNIA, MONDAY, JANUARY 16, 1967, 10:00 A.M.

"THE COURT: All right. During the proceedings here this morning most of the defendants are going to be asked to respond to certain questions that will be posed by or asked by the court clerk here who sits in front of me. In order that they may be of record and comply with the law, particularly with respect to the appointment of attorneys for those who cannot afford attorneys,

---

crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the Witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

See also: Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

5. 18 U.S.C. § 2113(a)
"§ 2113. *Bank robbery and incidental crimes*
(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or
Whoever enters or attempts to enter any bank, or any savings and loan as-

sociation, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—
Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\*　　\*　　\*　　\*　　\*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

6. Indictment No. 144-CD, Count Two.

the defendants are going to be asked to answer these questions under oath.

"At this time I am going to ask the clerk to have all the defendants stand and be sworn to testify truly under oath with respect to these matters of appointment of attorneys.

"THE CLERK: All defendants in the court room, will you please raise your right hand, that is, all defendants.

"You do solemnly swear that you will answer all questions truthfully that may be asked of you by the court? If you do, say 'I do.'

"THE DEFENDANTS: I do.

"THE COURT: All right, you may be seated.

"Every person who is up here as a defendant and against whom a charge has been made is entitled to have an attorney represent him at all stages of the proceedings. If he wants to have his own attorney and can afford to hire him, that's fine, and he may be so, or she may do so. If he or she does not have an attorney and cannot afford one, just answer the questions truthfully, and if that be the situation, an attorney will be appointed for you from a panel approved by the Los Angeles Bar Association, a group of attorneys, all high type and qualified, who will assist you in your defense.

"I might add, it is foolish to try to be your own lawyer. The procedures are not terribly complicated, but they are complicated enough so if you can't afford one, speak up and one will be appointed.

"First of all, to make sure that everyone is represented, then, we will go through the calendar and the clerk will call those cases where it is clear at the moment, or seems to be clear, that there is no attorney appointed. So when your name is called, please stand right where your are, it is not necessary for you to come to the lectern where ordinarily defendants will come for pleas, and you can answer the questions from right where you are. All right.

"THE CLERK: No. 1 on the calendar.

"(Other court matters.)

"THE CLERK: 58 on the calendar. 144—Criminal, United States of America vs. Ernest Manfred Davenport.

"Mr. Davenport, did you take the oath this morning?

"DEFENDANT DAVENPORT: Yes.

"THE CLERK: Do you have an attorney?

"DEFENDANT DAVENPORT: No, I don't.

"THE CLERK: Do you have the money or means with which to employ an attorney?

"DEFENDANT DAVENPORT: No, I don't.

"THE CLERK: Do you wish the court to appoint an attorney for you?

"DEFENDANT DAVENPORT: Yes, I do.

"THE COURT: Mr. Jaffe, please represent Mr. Davenport." (Rep. Tr., Jan 16, 1967, pp. 3–5.)

The Court thereby appointed Sheldon M. Jaffe, Esq., a member of the State Bar of California, a graduate of Harvard Law School, and a highly qualified member of the Central District's Federal Indigent Defense Panel supplied by the Los Angeles County Bar Association, to represent the petitioner.

Following the appointment of Mr. Jaffe, the Court continued to notify the petitioner and the other defendants present in the courtroom of his and their rights as follows:

"It is my duty now, and I am going to inform you of your Constitutional rights, which the law requires that I do as part of your arraignment here this morning.

"At the time that your respective matters are called you will be asked whether or not you heard these statements, so please listen carefully.

"You are entitled to a speedy trial by jury; speedy and public trial by jury; you are entitled, as I said, to

be represented by an attorney at all stages of the proceedings, trial, too; you are entitled to be confronted by witnesses who are testifying against you, and to cross examine them either directly or through your attorney; you are entitled to call witnesses on your own behalves to testify in your favor.

"Now the clerk will please call the arraignment and plea calendar.

"(Other court matters.)

"THE CLERK: 58 on the calendar. 144—Criminal, United States vs. Ernest Manfred Davenport.

"State your name for the record, please, counsel.

"MR. JAFFE: Sheldon M. Jaffe for the defendant.

"THE CLERK: Ernest Manfred Davenport, is that your true name?

"MR. DAVENPORT: Yes, it is.

"THE CLERK: Did you hear the statements made by the court this morning regarding your Constitutional rights?

"DEFENDANT DAVENPORT: Yes, I did.

"THE CLERK: Did you understand that court's statements?

"DEFENDANT DAVENPORT: Yes.

"THE CLERK: Do you have any questions regarding the court's statements?

"DEFENDANT DAVENPORT: No, I don't."

(Rep.Tr., Jan. 16, 1967, pp. 6–7)

After conferring with Mr. Jaffe, petitioner entered a plea of not guilty to the offense charged. At this time Mr. Jaffe made a motion for a separate trial for petitioner in an attempt to sever the trial of petitioner from that of his co-defendant who had previously been arraigned and whose trial was set for January 23, 1967. The Court granted counsel's motion. (Rep.Tr., Jan. 16, 1967, p. 14.)

On January 23, 1967, petitioner, through his counsel, made a motion for a change of plea. At that time the Court orally inquired:

"THE COURT: Do you have a motion, counsel?

"(Proceedings involving other defendants.)

"THE CLERK: Mr. Jaffe.

"MR. JAFFE: Sheldon Jaffe for the defendant Davenport.

"The defendant Davenport desires to withdraw his former plea of not guilty and enter a plea of guilty, your Honor.

"THE COURT: As to Count—

"MR. JAFFE: Count Two of indictment 144.

"THE CLERK: Does the defendant waive reading of the indictment, Mr. Jaffe?

"MR. JAFFE: Yes, he does.

"THE CLERK: I will ask the defendant Ernest Manfred Davenport, how do you plead, guilty or not guilty?

"DEFENDANT DAVENPORT: Guilty.

"THE COURT: Is that 2113(a) or (d) or both?

"THE CLERK: Both.

"THE COURT: Have you discussed with your attorney the nature and circumstances of the offense charged?

"DEFENDANT DAVENPORT: Yes, I have.

"THE COURT: Has he explained the maximum that the court could impose here?

"DEFENDANT DAVENPORT: Yes.

"THE COURT: What is it, please?

"DEFENDANT DAVENPORT: 25 years or $10,000, or both.

"THE COURT: Has there been any promise of reward or special treatment made to you?

"DEFENDANT DAVENPORT: No.

"THE COURT: Any threat of coercion or violence?

"DEFENDANT DAVENPORT: No.

"THE COURT: You understand this is an admission of the essential allegations of the charge?

"DEFENDANT DAVENPORT: Yes.

"THE COURT: You are pleading guilty because you are, and for no other reason?

"DEFENDANT DAVENPORT: Yes.

"THE COURT: You stand convicted on your plea of guilty. Probation hearing and sentencing set for February 20th at 2:00 p. m.

"(Whereupon the case was continued to February 20, 1967, at 2:00 P.M.)"

(Rep.Tr., Jan. 23, 1967, pp. 3–4.)

On February 20, 1967, petitioner came before the Court for probation hearing and sentencing. Again, the Court inquired of petitioner:

"THE COURT: Is there anything you desire to say before we take up your probation report and sentencing?

"MR. DAVENPORT: Yes, your Honor. I would like to say that I am very sorry for what happened.

"THE COURT: Tell me what happened about shooting the teller. This is what I am particularly concerned about.

"MR. DAVENPORT: Well, at this time I was, you know, my financial problems were getting very, very deep and I needed, you know, I needed some money, and I went in there, but I didn't go intentionally to hurt anyone there and—

"THE COURT: How did the shooting happen?

"MR. DAVENPORT: Well, your Honor, I was very nervous and I—

something—saw—maybe saw a hundred and fifty people—Jesus—and 'This is not true at all.' And when I jumped around looking at everybody, not knowing that I had applied that much pressure to the trigger—and this is what made it go off, and when it did I couldn't stay there. I had to leave, and this is why—I had to leave and this is why I said I'm sorry."

(Rep.Tr., Feb. 20, 1967, pp. 3–4.)

In his Presentence Report the Probation Officer gave the petitioner's "Version Of Offense":

"During the summer of 1966 he and codefendant Tommy Brown shared an apartment. During one period of unemployment, Brown stated he was going out to get money. About two days later, he had a 1964 Plymouth and gave defendant about $25.00 cash. At this time, Brown and some of his other acquaintances explained to defendant how he could make some money, but he did not have nerve enough to join them at that time. He was told the motto of the group was: 'Nothing to it, but to do it.' Due to the fact he owed hospital bill, lawyer fees, child support and was sleeping in a car due to lack of room rent, he finally decided to take part in a robbery. Davenport admits his participation with Tommy Brown in the attempted robbery of the Security First National Bank on October 4, 1966. He further admits he was the one who fired the shot that struck the bank teller."

(Presentence Report, pp. 2–3.)

Following the inquiry by the Court and taking the Presentence Report into consideration, the petitioner was found to be 23 years of age at the time of conviction and eligible for treatment under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5024, as a Young Adult Offender under 18 U.S.C. § 4209,[7] and in

7. 18 U.S.C. § 4209.
"§ 4209. *Young adult offenders*
In the case of a defendant who has attained his twenty-second birthday but has not attained his twenty-sixth birthday at the time of conviction, if, after taking into

consideration the previous record of the defendant as to delinquency or criminal experience, his social background, capabilities, mental and physical health, and such other factors as may be considered pertinent, the court finds that there is reason-

need of confinement. Accordingly, the Court committed him to custody for treatment and supervision for a period of 20 years, pursuant to 18 U.S.C. § 5010(c)[8] or until discharged by the Federal Youth Corrections Division of the Board of Parole pursuant to 18 U.S.C. § 5017(d).[9] At the same time the Court recommended that the petitioner receive adequate psychiatric treatment while in custody. (Rep.Tr., Feb. 20, 1967, pp. 6–7; Judgment, Feb. 20, 1967.)

### PETITIONER'S FIRST CONTENTION:

*Conviction should be vacated because no preliminary hearing before Commissioner.*

█ Petitioner's first contention is that his conviction should be set aside because he was not taken before a Commissioner as required by Rule 5(a), Federal Rules of Criminal Procedure. This contention is completely without merit. The files and records examined in the light of the applicable law are crystal clear on this point and show no denial of any of petitioner's constitutional or statutory rights.

The Indictment in this case was returned on December 21, 1966. Petitioner could not be found and a bench warrant was issued for him. He was found in the County Jail on December 29, 1966 and the bench warrant was served upon him. Within a reasonable period after he was found in State custody, he was brought before the Federal Court on January 16, 1967, for arraignment and plea.

█ There was no prior preliminary hearing before a Commissioner, but the purpose of such a preliminary hearing is to determine whether or not there is probable cause to believe that the defendant has committed an offense. Vincent v. United States, 337 F.2d 891, 896 (8th Cir. 1964), cert. den. 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1964), reh. den. 381 U.S. 947, 85 S.Ct. 1775, 14 L.Ed. 2d 714 (1965); Barrett v. United States, 270 F.2d 772, 775 (8th Cir. 1959).

█ After a person is indicted he has no right to a preliminary hearing before a Commissioner under Rule 5(a), Federal Rules of Criminal Procedure. Probable cause for holding him for trial has been found by the Grand Jury in the Indictment and no preliminary hearing is required. Bayless v. United States, 381 F.2d 67 (9th Cir., July 19, 1967), citing and relying upon United States v. Salliey, 360 F.2d 699 (4th Cir. 1966), and Byrnes v. United States, 327 F.2d 825, 834 (9th Cir. 1964), cert. den. 377 U.S. 970, 84 S.Ct. 1652, 12 L.Ed.2d 739 (1964).[10]

able grounds to believe that the defendant will benefit from the treatment provided under the Federal Youth Corrections Act (18 U.S.C. Chap. 402) sentence may be imposed pursuant to the provisions of such Act."

**8.** 18 U.S.C. § 5010(c).
"§ 5010. *Sentence*
(c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter."

**9.** 18 U.S.C. § 5017(d).
"§ 5017. *Release of youth offenders*
(d) A youth offender committed under section 5010(c) of this chapter shall be released conditionally under supervision not later than two years before the expiration of the term imposed by the court. He may be discharged unconditionally at the expiration of not less than one year from the date of his conditional release. He shall be discharged unconditionally on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction."

**10.** In addition to Vincent v. United States, 337 F.2d 891 (8th Cir. 1964), supra, and Bayless v. United States, 381 F.2d 67 (9th Cir., July 19, 1967) supra, see also: United States ex rel. Bogish v. Tees, 211 F.2d 69, 72 (3rd Cir. 1954); Barber v. United States, 142 F.2d 805, 807 (4th

■ Here the Indictment had already been filed on December 21, 1966, before the petitioner had been located and even one day before the arrest warrant issued on the Commissioner's Complaint was returned unexecuted. The Grand Jury by returning the Indictment had resolved the question of probable cause and thereby eliminated the necessity for a preliminary hearing before the U.S. Commissioner.

■ The fact that petitioner was in State custody at the time he was finally located by Federal authorities does not give petitioner any right to a preliminary hearing before a Commissioner after a Federal Indictment has been returned. Barrett v. United States, 270 F.2d 772 (8th Cir. 1959), supra.

### PETITIONER'S SECOND CONTENTION:

*Conviction Should be Vacated Because of Denial of Counsel.*

Petitioner's second contention that he was denied representation of counsel in violation of 18 U.S.C. § 3006A and the ruling of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), also lacks merit.

■ The files and records conclusively show that petitioner was more than adequately represented at all times by competent counsel and there is absolutely no reason that would justify vacating his conviction or setting his conviction aside. Williams v. Beto, 354 F.2d 698, 704 (5th Cir. 1965); Bouchard v. United States, 344 F.2d 872, 874 (9th Cir. 1965); Codfield v. United States, 263 F.2d 686, 689 (9th Cir. 1959).

■ Petitioner also makes reference to his being questioned by officers while he was in State custody. He contends that he requested an attorney be provided for him but he adds that at all times he refused to sign any of the papers investigating officers purportedly asked him to sign.

These allegations are clearly inadequate to raise any issue of a denial of petitioner's constitutional rights. Nowhere does petitioner allege that he answered any of the questions asked by the officers. In his affidavit accompanying his petition he admits he refused to sign any of the papers which the officers asked him to sign. There is no allegation by petitioner that, upon or after any interrogation, he furnished the officers any evidence of any kind—statement, admission or confession—without the presence or advice of an attorney.

■ But even if petitioner were to adequately allege that he made statements to the officers after demanding and being refused an attorney, such allegation would not raise any issue of a denial of his constitutional rights. Snipe v. United States, 343 F.2d 25, 28 (9th Cir. 1965), cert. den. 382 U.S. 960, 86 S.Ct. 440, 15 L.Ed.2d 363 (1965). No statement of petitioner was ever offered in evidence in any way, whether in the form of a confession, or an admission, or otherwise, so the Court finds the facts here do not bring petitioner within the teachings or rulings of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ The record shows that petitioner pleaded guilty before this Court. That is enough to deny petitioner's motion here, because even if petitioner had made some statement, confession or admission (which he obviously had not), it would have no bearing on this pending motion under 18 U.S.C. § 2255. As the 7th Circuit stated in United States v. French, 274 F.2d 297, 299 (7th Cir. 1960):

"A plea of guilty, if understandingly and voluntarily entered, is conclusive. Nothing more is required. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009. The basis of the conviction is the guilty plea and not the evidence, including a con-

Cir. 1944), cert. den. 322 U.S. 741, 64 S.Ct. 1054, 88 L.Ed. 1754 (1944) ; Boone

v. United States, 185 F.Supp. 411, 412 (D. C.Ky.1960).

fession, which might be offered if the case proceeded to trial. The question of the admissibility of the confession as evidence therefore becomes immaterial under such circumstances."

## PETITIONER'S THIRD CONTENTION:

### *Guilty Plea Given Under Duress.*

 The petitioner's third contention that his plea of guilty was given under duress is also shown by the record to be without merit. Without quoting or repeating in detail the Reporter's Transcript of proceedings in Court when his plea of guilty was taken, suffice it to say that the record unequivocally demonstrates the Court asked the petitioner whether he had discussed the nature and circumstances of the offense with his attorney; whether his attorney has explained the maximum penalty that the Court could impose; whether there had been any promise of reward or special treatment made to him; whether there had been any threat of coercion or violence; whether he understood that the plea of guilty was an admission of the essential allegations of the charge; and whether he was pleading guilty because he was and for no other reason. Only after receiving positive "yes" responses to these questions did the Court find the petitioner convicted upon his plea of guilty.

## CONCLUSION

The allegations of the motion have no substance or support in the record here. On the contrary, every contention of the motion is overwhelmingly refuted by both the record and proper reading of the law. Petitioner has failed to allege grounds entitling him to a hearing and therefore this Court finds that none is necessary.

Petitioner's motion and all the files and records of the case "conclusively show that the prisoner is entitled to no relief," and particularly to no hearing. 28 U.S.C. 2255,[11] Earley v. United States, 381 F.2d 715 (9th Cir. July 31, 1967), citing and quoting United States v. Fleenor, 177 F.2d 482 (7th Cir. 1949).

## ORDER

Now, therefore, it is hereby ordered that petitioner's motion to vacate and set aside sentence pursuant to 28 United States Code 2255 be and the same is denied.