**William SHANE, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20881.**

United States Court of Appeals Ninth Circuit.

Oct. 5, 1966.

Rehearing Denied Oct. 24, 1966.

Lee Overfelt, Billings, Mont., for appellant.

Moody Brickett, U. S. Atty., Arthur W. Ayers, Jr., Asst. U. S. Atty., Billings, Mont., for appellee.

Before HAMLEY, HAMLIN and KOELSCH, Circuit Judges.

HAMLIN, Circuit Judge:

The petitioner, William Shane, Jr., an Indian who lived at the Crow Indian Reservation in Montana, was convicted by a jury of first degree murder on July 12, 1939, in the United States District Court for the District of Montana, and was sentenced to life imprisonment. No appeal was taken from his conviction. On November 22, 1954, petitioner filed a motion to vacate and set aside his sentence under 28 U.S.C. § 2255. Counsel was appointed to represent him. A hearing on this motion was delayed because of petitioner's mental incompetency. On June 1, 1956, a report from the Medical Center for Federal Prisoners, Springfield, Missouri, was filed stating that petitioner was then mentally competent. On June 7, 1956, a hearing was held on the merits of his section 2255 motion before United States District Judge Pray (the same judge who had presided during his trial in 1939). The motion was denied by Judge Pray on January 12, 1957.

Appellant contended in his 1954 motion that he had been arrested on January 27, 1939, when he was sixteen years old, that he had been threatened and mistreated by the FBI agents because of his refusal to answer questions, that he had been physically mistreated, and that he had been kept without food and prevented from seeing his father "until he submitted the confession." He further alleged that because of this physical mistreatment he was coerced to "sign the false statement confession." He further alleged that the FBI threatened him with "torture and bodily harm" if he did not plead guilty before the United States Commissioner. He alleged that the United States Commissioner did not properly advise him of his rights when he was arraigned, that at his trial the FBI used perjured testimony to convict him, and that the judge made prejudicial remarks from the bench, all of which prevented him from getting a fair trial.

On June 7, 1956, there was a full hearing on appellant's motion before the United States District Judge in Billings, Montana. Eleven witnesses, including the appellant, testified and the matter was thoroughly briefed before the court.

A transcript of that hearing, consisting of over a hundred and fifty pages, discloses, *inter alia*, the following facts. Appellant, with another boy about his own age, was contacted by state and federal officers around 8:30 or 9 p. m. on the night of Thursday, January 26, 1939. Appellant's father was present. Appellant was taken to the Hardin County jail and was questioned concerning a man's death several days earlier. The officers had information that the two boys purchased a gun shortly prior to the decedent's death. Appellant denied any knowledge of the gun or having any connection with the death. On January 27 he was again questioned and at that time admitted that he purchased the gun some days earlier, but denied that he and the other boy had fired it. He told the officers where the gun was located and they found it. On January 28 both appellant and the other boy were taken to the scene of the shooting and they both then admitted that they had shot the gun on the day in question in target practice. Shane told conflicting stories, including that he had fired at a post and had seen a man fall. He said that he had not told his companion of seeing this. He said that later he went to where

the man fell and while there the gun discharged accidentally while he was holding it, and the bullet had hit the decedent's head. Still later he told the officers that he had shot the decedent in the back.

Appellant signed statements on January 28, 29 and 30, 1939. Each of these statements was prepared by an FBI agent at the time appellant was interrogated. After the statements were prepared they were read to the appellant and he signed them. Each statement contains a different version of what occurred. Each statement contains language to the effect that he had been told by the FBI that he was entitled to have a lawyer, that no threats or promises had been made to him to get him to make the statement, that the statement was voluntary and that he just wanted to tell the truth.

There is no transcript of the proceedings at the 1939 trial and it appears that the shorthand notes of the reporter are not in existence. However, the clerk's minutes of the trial show that none of the three written statements signed by the appellant were admitted into evidence during the prosecution's case in chief.[1]

In his 1956 order denying Shane's motion Judge Pray, after setting out the nature of the hearing and the fact that witnesses testified both in support of and against the motion, stated:

"After the hearing the transcript of the hearing on the motion was furnished to the court and to counsel on both side [sic], briefs were thereafter filed by both sides and the matter submitted to the court on January 4, 1957. The court has given due consideration to the evidence and exhibits and the briefs of counsel for both sides

and it appears to the court that the defendant-petitioner has failed to sustain the motion under consideration herein, and being duly advised, and good cause appearing thereof, is of the opinion that the motion should be denied and overruled, and such is the order of the court herein."

On October 28, 1963, petitioner filed the present motion under 28 U.S.C. § 2255. At the request of petitioner the same counsel who represented him at the 1956 hearing was appointed as counsel. After some delay occasioned by Shane's being on parole, a hearing on this petition was held on August 4, 1965, before United States District Judge Jameson. At that hearing counsel for petitioner and the government agreed that the transcript of testimony taken before Judge Pray in 1956 could be considered for all purposes in determining petitioner's second motion and that further testimony would not be necessary.

Section 2255 contains in part the following language: "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

In Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148, the Court considered the procedure in cases of successive applications for relief under section 2255, and stated, "Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of

1. Judge Jameson's order contains the following statement:
"The court minutes reflect that a hearing on the admissibility of 'certain written statements made and signed by the defendants' was held out of the presence of the jury during the Government's case in chief. However, the confessions signed by petitioner were not introduced until after the plaintiff had rested, and the petitioner had testified in his own behalf in his case in chief. F.B.I. agent Gray was recalled in rebuttal and the documents introduced. While it is not necessary to pass on this point in view of the position I have taken with respect to the admissibility of the confessions against petitioner, I feel this fact further supports the ruling of Judge Pray. See Forsberg v. United states [sic], 9 Cir. 1965, 351 F.2d 242."

the subsequent application." 373 U.S. at 15, 83 S.Ct. at 1077.

Judge Jameson carefully considered the guide lines set out in *Sanders, supra,* and determined that (1) the same grounds for relief set out in the second section 2255 motion had been determined adversely to Shane in the 1956 hearing (2) that the prior determination was on the merits; and (3) that in the exercise of his discretion he could have denied petitioner any hearing on the motion before him. He stated, "The motion, however, was not denied without a hearing. Instead, the petitioner was given the opportunity to present new evidence and legal arguments. The procedure followed here is in keeping with the Court's directive in Sanders that even if a ground for relief was rejected on the merits in a previous application, the matter is to be redetermined if it would serve the interest of justice to do so." He then determined that the factual grounds for relief in the second motion had all been raised and determined adversely to the petitioner after a complete hearing on the first motion, and that no new evidence concerning these factual issues was offered at the time of the second hearing.

He did, however, give special consideration to two issues which he set forth as follows:

"(1) Under the law as presently interpreted, were the petitioner's constitutional rights violated through the introduction into evidence of the preliminary statements made by him to the F.B.I. while a minor and during a period in which he was not represented by counsel?

"(2) Was a statement of 'guilty' made at the United States Commissioner's hearing introduced into evidence and if so were petitioner's constitutional rights violated thereby?"

The determination of the first question depends largely on the facts surrounding the interrogation of appellant. The details of this questioning and the determination of whether any constitutional rights of appellant were violated were the principal issues under consideration in the 1956 hearing. The testimony of Shane as to what happened was directly controverted by three FBI agents and by the United States Commissioner. The government witnesses testified that all statements by Shane were voluntary, that no physical force or coercion of any kind was exerted on him to induce him to make a statement, and that he understood "very well" the questions that were asked. The government's testimony further was that there was no refusal to permit Shane's father or anyone else to see him and that he was not deprived of food at any time. The testimony established that while Shane and his companion were being held in the Hardin County jail on September 26 the superintendent of the Crow Indian Reservation came to the sheriff's office and requested permission to talk to them. Permission was granted and he talked to each of them. In addition to the oral testimony of the FBI agents and the United States Commissioner as to the voluntary nature of Shane's statements, each written statement signed by Shane as above mentioned contained a statement that he had been told by the FBI that he could have a lawyer if he wanted one and that he had expressed no request for a lawyer at any time.

In considering the question of the admissibility of statements of minors the Supreme Court said in Gallegos v. State of Colorado, 370 U.S. 49, 55, 82 S.Ct. 1209, 1213, 8 L.Ed.2d 325, "There is no guide to the decision of cases such as this, except the totality of circumstances that bear on the two factors we have mentioned." The district judge in considering the "totality of circumstances" stated that there was no sufficient showing that a redetermination of this issue would serve the ends of justice. We agree.

A claimed violation of Shane's right to counsel during the questioning by the officers was argued by appellant in the district court by relying upon Escobedo v. State of Illinois, 378 U.S.

478, 84 S.Ct. 1758, 12 L.Ed.2d 977. However, since the decision of the district court the *Escobedo* rule has been determined not to be retroactive, Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, decided June 20, 1966.

 Whether there was unnecessary delay in arraigning Shane before the United States Commissioner was also considered in the 1956 hearing. Evidence tended to show that after Shane's arrest on Thursday, January 26, there was doubt as to whether state or federal authorities had jurisdiction of the crime. He was initially held in the Hardin County jail. On Saturday, January 28, it was determined that the federal government had jurisdiction. He was taken late Saturday to Billings, Montana, where the United States District Court is located, and on Monday following was arraigned before the United States Commissioner. Implicit in Judge Pray's ruling was that there was no unnecessary delay in his arraignment, and we agree.

 The last contention made by Shane was that there was a guilty plea entered before the United States Commissioner without the presence of counsel, and that thereby his constitutional rights were violated. However, when he was arraigned in the United States District Court he entered a not guilty plea and later proceeded to trial on this plea, being represented by counsel. There is no evidence of any kind that the guilty plea before the Commissioner was introduced in evidence or that the jury in any way had knowledge of such action. There has been no showing of any violation of petitioner's rights.

Twenty-seven years have elapsed since the trial of Shane.[2] For fifteen years after his trial he made no complaint. After his full scale hearing in 1956 and its adverse determination, he took no action for seven years. Then he filed a

motion making the same contentions that he had made previously, but presenting no new evidence to establish them. We hold that the action of Judge Jameson in denying Shane's motion to vacate and set aside his sentence was proper.

Judgment affirmed.

---

2. On September 14, 1961, Shane was released on parole, on August 30, 1962 he was returned to custody for violating the conditions of his parole.

Again on March 10, 1964, Shane was released on parole and again in November, 1964, he was remanded to custody for violating the conditions of his parole.