UNITED STATES of America,
Plaintiff-Appellee,

v.

Roy Lee JERNIGAN,
Defendant-Appellant.

No. 78–1174.

United States Court of Appeals,
Ninth Circuit.

Aug. 7, 1978.

Rehearing and Rehearing En Banc
Denied Sept. 25, 1978.

**1212**

Thomas M. Schneiger, Portland, Or., Stuart Trecher (argued), Portland, Or., for defendant-appellant.

Kenneth Bauman, Asst. U. S. Atty., Portland, Or., Frank Wilson, Asst. U. S. Atty. (argued), Portland, Or., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and GRANT,* District Judge.

DUNIWAY, Circuit Judge:

Jernigan was convicted on all eight counts of an indictment charging, in four counts, distribution of cocaine, a violation of 21 U.S.C. § 841(a)(1), and in four counts, the use of a telephone to facilitate distribution of cocaine, a violation of 21 U.S.C. § 843(b). All sentences are concurrent. On appeal, he makes two claims of error. We reject them both, and affirm.

I.

## USE OF RECORDINGS OF TELEPHONE CONVERSATION

The government introduced in evidence tape recordings of a number of telephone conversations between Jernigan and an informant or between him and an agent of the Drug Enforcement Administration (DEA). Each conversation had been recorded without Jernigan's knowledge but with the knowledge and consent of the other party to the conversation, i. e., the informant or the agent. Before trial, Jernigan unsuccessfully moved to suppress all of the

recordings in question. This motion was denied.

Jernigan concedes, as he must, that the recording or overhearing of the conversations did not violate his constitutional rights under the Fourth Amendment. *Rathbun v. United States*, 1957, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134; *United States v. Cosby*, 9 Cir., 1974, 500 F.2d 405. He also concedes that making the recordings is permitted by statute, 18 U.S.C. § 2511(2)(c) and (d). Rather, he argues that he has been deprived of due process guaranteed by the Fifth Amendment. He says that his telephone conversations were overheard and recorded in violation of the Attorney General's Memorandum to the Heads of Executive Departments and Agencies, issued on October 16, 1972, and that this violation denied him due process. He relies on our decision in *United States v. Caceres*, 9 Cir., 1976, 545 F.2d 1182.

In *Caceres*, we held that tape recordings of face to face conversations, made by Internal Revenue Service (IRS) agents by means of a device carried by one of the participants in the conversations, must be suppressed because the recordings were made in violation of IRS's own regulations. Those regulations, in turn, had been adopted in response to the Attorney General's Memorandum. In so holding, we followed our decision in *United States v. Sourapas*, 9 Cir., 1975, 515 F.2d 295.

The situation in Jernigan's case is different, however. The Attorney General's Memorandum deals with two kinds of conversations, "(a) *Conversations other than telephone conversations*," about which the Memorandum sets out detailed regulations, and "(b) *Telephone Conversations*." As to the latter, here is what the Memorandum says:

Telephone conversations—because they involve the transmission of the participants' conversations through a complex and far-flung network of wires, the common use of multi-party lines and exten-

sion telephones, and the possibility of an unseen participant permitting another person to listen at the same telephone—have long been considered not to justify the same assumption of privacy as a face-to-face conversation. Nevertheless, there is still a need to provide for the supervision and control of consensual monitoring of telephone conversations. Accordingly, the current practice of charging each department and agency with control of such consensual monitoring by its agents will continue. Each department and agency head shall assure the adoption or the continuation of agency rules on this subject. Such rules shall also provide for the expeditious, oral authorization of such monitoring where necessitated by exigent circumstances.

In response to the requirements of the Memorandum, the DEA Agents Manual, § 6166.21, provides:

6166.21 Telephone Consensual

A. Definition. A consensual telephone conversation is one which is being intercepted or monitored with the prior permission or consent of at least one of the parties engaged in the conversation.

B. Authorization. Prior authority from DEA Headquarters is not required for the monitoring and recording of consensual telephone conversations.

C. Recording and Reporting. The separate reporting of monitored consensual telephone conversations is not required; however, the monitoring and recording of all consensual telephone conversations will be reported in the appropriate reports of investigation or informant statements.

Recordings will be made of all consensual telephone interceptions when technically possible.

Thus the DEA has, in response to the Attorney General's Memorandum, adopted regulations. Those regulations do not require, and the Memorandum of the Attorney General does not require that they require, advance approval of the monitoring and recording of telephone conversations with the consent of one party. DEA has

not violated either its own regulations or the Memorandum. The DEA is itself an agency in the Department of Justice. See 5 U.S.C.A. Appendix II, Reorganization Plan No. 2 of 1973, Sec. 4. We can hardly assume that DEA's Manual, quoted above, violates the Attorney General's Memorandum. Presumably, the Attorney General does not think so.

*Caceres, supra,* is not in point. It was not error to deny the motion to suppress.

II.

DENIAL OF BAIL

■ The indictment was returned on Tuesday, May 24, 1977, a bench warrant for Jernigan was issued, and bail was set at $10,000. However, no attempt was made to arrest Jernigan until Friday, May 27. On that day DEA Agent Horn began watching Jernigan at about nine o'clock in the morning. No arrest was made, however, until about 3:30 in the afternoon. Horn summoned to his assistance another DEA agent and 4 Portland policemen who participated in the arrest. Horn had had the warrant since Wednesday, May 25. Horn admitted that the policemen responded within 20 minutes after he called them, but claimed that he could not get a DEA agent to assist him until the time of the arrest. Horn took Jernigan to the DEA office, a block and a half from the United States Court House. He then contacted "the U.S. Marshals" and was told to deliver Jernigan to the Multnomah County Booking Facility. This was done after about an hour. Jernigan asked to be taken before a magistrate or to court to have bail set. Horn did not do so. This is directly contrary to the requirement of Rule 9(c)(1), F.R.Crim.P.: "The officer executing the warrant [of arrest] shall bring the arrested person promptly before the court or before a United States magistrate." Horn told Jernigan that he would be in jail until Tuesday, and would have a long weekend to think about the matter. This is precisely what happened; Jernigan was promptly released on Tuesday morning on $2,000 bail set by the magistrate, with

$200 cash deposit. Monday, May 30, was a holiday.

Our reading of the record persuades us that agent Horn deliberately delayed arresting Jernigan until a time when, as he well knew, Jernigan would not be able to go before a magistrate, have bail reset, and be released. We deplore this kind of behavior, and its repetition may lead us to invoke the drastic remedy, dismissal of the indictment, that Jernigan asks us to invoke.

The magistrate who heard the motion to dismiss made no finding as to whether Horn deliberately timed the arrest to assure that Jernigan would spend three days in jail. He concluded that the delay was not unreasonable, a conclusion that we have some difficulty in accepting. He also found that no statements were made by Jernigan during the delay that could be used against him. Jernigan points to no prejudice other than the fact that he spent three days in jail. We think that to vacate Jernigan's conviction and dismiss the indictment would be too drastic a remedy in this case and we decline to invoke it.

Affirmed.