**UNITED STATES of America, Plaintiff,**

v.

**Confesor MELENDEZ, Defendant.**

**No. Crim. 99–116(JAF).**

United States District Court, D. Puerto Rico.

July 14, 1999.

Asst. U.S. Attorney Desiree Laborde–Sanfiorenzo, Guillermo Gil, U.S. Attorney, San Juan, PR, for plaintiff.

Asst. Federal Public Defender Carlos A. Vazquez–Alvarez, Joseph C. Laws, Jr., Federal Public Defender, San Juan, PR, for defendant.

### OPINION AND ORDER

FUSTE, District Judge.

Defendant, Confesor Meléndez, moves to dismiss the indictment against him because of an alleged violation of Fed. R.Crim.P. 5(a).

### I.

On or about April 14, 1999, Immigration and Naturalization Service ("INS") officials detained Defendant for allegedly attempting to enter the United States in violation of 8 U.S.C. § 1326(a)(2)(A), (b)(2).[1] The day of Defendant's detention, Special (Border) Patrol Agent Martin Santiago interviewed Defendant. Defendant informed Agent Santiago that he was a national of the Dominican Republic. An immigration check revealed that Defen-

---

1. Sections 1326(a)(2)(A) and (b)(2) provide, in relevant part:

   (a) In general

   Subject to subsection (b) of this section, any alien who—

   \* \* \* \* \* \*

   (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission;

   \* \* \* \* \* \*

   (b) Criminal penalties for reentry of certain removed aliens

   Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

   \* \* \* \* \*

   (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both.

   8 U.S.C. § 1326.

dant had been deported from the United States on July 27, 1997 after his conviction of burglary, assault, possession with intent to distribute cocaine, and possession of a weapon in New York state court. Although INS officials had arrested Defendant, they did not bring him before a magistrate for an initial appearance within forty-eight hours of his arrest.

On April 29, 1999, a federal grand jury for the District of Puerto Rico indicted Defendant for violating 8 U.S.C. § 1326(b)(2). On April 30, 1999, sixteen days after his arrest, officials brought Defendant before Magistrate Castellanos for an initial appearance.

## II.

Following arrest, the government is obliged to take a defendant before the nearest federal magistrate without unnecessary delay. Fed.R.Crim.P. 5(a); *see also United States v. Alvarez–Sanchez*, 511 U.S. 350, 357, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994); *County of Riverside v. McLaughlin*, 500 U.S. 44, 57, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (stating that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to extended detention following a warrantless arrest); *United States v. David Forde*, 30 F.3d 127 (1st Cir.1994). Rule 5(a) of the Federal Rules of Criminal Procedure provides, in relevant part:

> (a) In General. Except as otherwise provided in this rule, an officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge or, if a federal magistrate judge is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.

Fed.R.Crim.P. 5(a). The express language of Rule 5(a) mandates the prompt presentment of an arrestee before a magistrate only in two situations: (1) where the arrest is made "upon a complaint;" and (2) where the arrest is made "without a warrant." We must first decide if Rule 5(a) is applicable to a defendant charged with a violation of 8 U.S.C. § 1326; and then, if it is applicable, determine whether the INS officers here abided by the contours of Rule 5(a).

■ "Federal officers must comply with Rule 5(a) if the alien is being charged with a non-status offense." *United States v. Sotoj Lopez*, 603 F.2d 789 (9th Cir.1979) (holding that pending immigration proceedings could not deprive defendant of his Rule 5(a) rights with respect to an additional assault charge). Therefore, if section 1326 is a non-status offense, the federal INS officers here should have complied with Rule 5(a). The question then is whether section 1326 is a non-status offense. The government takes the position that "an offense for illegal entry after deportation [§ 1326] is, by definition, a status offense," and that Rule 5(a), therefore, is inapplicable to such a violation. *See Docket Document No. 10, p. 3.*

■ We disagree. The definition of a status crime is "[a] class of crime which consists not in proscribed action or inaction, but in the accused's having a certain personal condition or being a person of a specified character," such as the crime of vagrancy. *See* BLACK'S LAW DICTIONARY 1410 (6th ed.1990). In order to prove a violation of 8 U.S.C. § 1326, the government must prove arrest, deportation, and reentry. *United States v. DeLeon–Rodriguez*, 70 F.3d 764, 766 (3d Cir.1995); *United States v. Asibor*, 109 F.3d 1023, 1031 (5th Cir.1997). Therefore, section 1326 requires more than that the offender be an alien. It requires that the previously-deported alien commit the act of entering or attempting to enter the United States. Section 1326 is a crime of action, not of status. Therefore, we reject the government's contention and find that section 1326 is a non-status offense. As a non-

status offense, section 1326 requires Rule 5(a) protection.

The government makes a special effort to point out that Fed.R.Crim.P. 5 does not apply to civil deportation arrests of excludable aliens. This is correct, but irrelevant. Had INS officials arrested Defendant for civil deportation, Rule 5(a) would be inapplicable. *United States v. Cepeda–Luna*, 989 F.2d 353, 358 (9th Cir.1993) (stating that the "provisions of Rule 5 ... are inapplicable to civil deportation arrests"). But, in this case, the record shows that Defendant was arrested for a criminal offense, a violation of 8 U.S.C. § 1326. While a deportation proceeding is civil in nature, Defendant was arrested for a violation of 8 U.S.C. § 1326, which provides for "*criminal prosecution* for illegal re-entry following deportation." *See United States v. Martinez–Amaya*, 67 F.3d 678, 682 n. 5 (8th Cir.1995) (emphasis provided). The plain language of section 1326 provides for "*[c]riminal* penalties for reentry of certain removed aliens...." *See* 8 U.S.C. § 1326(b) (emphasis provided). Accordingly, we find that Fed.R.Crim.P. 5(a) is applicable to a defendant arrested for a violation of 8 U.S.C. § 1326.[2]

### III.

■ Next, we decide whether INS officials violated the terms of Rule 5(a) There is no question that INS officials arrested Defendant Meléndez without a warrant and failed to bring him before a magistrate without undue delay.[3] Thus, we find that INS officials violated Defendant's rights under Rule 5(a). Our inquiry now turns to the proper remedy for a violation of Fed. R.Crim.P. 5(a).

The vast majority of courts find that the purpose of Rule 5(a) is to prevent officers from using the period of delay to extract a confession. *See e.g., Upshaw v. United States*, 335 U.S. 410, 412, 69 S.Ct. 170, 93 L.Ed. 100 (stating that "the plain purpose of the requirement that prisoners should promptly be taken before committing magistrates was to check resort by officers to 'secret interrogation of persons accused of crime' ") (citing *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943)); *United States v. Purvis*, 768 F.2d 1237, 1238 (11th Cir.1985) (stating that the purpose of Rule 5(a) is to prevent oppressive police interrogations and other "third-degree" tactics before bringing the accused in front of an officer of the court) (citing *Mallory v. United States*, 354 U.S. 449, 451–54, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957)); *United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir.1973) (stating that purpose of Rule 5(a) "is to have a judicial officer advise the defendant of his constitutional rights and thereby to prevent administrative detection without probable cause and to reduce the opportunity for third-degree practices") (citing *Culombe v. Connecticut*, 367 U.S. 568, 584–585, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)). These courts use Rule 5(a) as an evidentiary or procedural tool to suppress statements made by arrested individuals who were not brought before a magistrate in a timely fashion.

In *Bayless v. United States*, 381 F.2d 67 (9th Cir.1967), the defendant unsuccessfully sought to have the court dismiss the indictment against him because of the government's violation of Rule 5(a). The defendant in *Bayless* was a prisoner who was

**2.** We found no case law which explicitly stated that Rule 5(a) either does or does not apply to an individual arrested for a violation of 8 U.S.C. § 1326. The Ninth Circuit touched upon but skirted the issue when it heard a defendant's appeal of his conviction for a violation of 8 U.S.C. § 1326. The defendant argued that the district court erred in not dismissing the case because of the government's violation of Rule 5(a). The court, without explicitly stating that Rule 5(a) was applicable to such a defendant, upheld the conviction on the basis that the defendant failed to show that any delay prejudiced him. *United States v. Vargas–Victoria*, 902 F.2d 1580 (9th Cir.1990) (unpublished disposition).

**3.** INS officials did not offer any reason for the sixteen-day delay in bringing Defendant before a magistrate for his initial appearance.

charged with, inter alia, escape. After his recapture, authorities returned him to prison, where he remained until his indictment for escape four months later. The Ninth Circuit found that Rule 5(a) had no application where the defendant sought only dismissal of the indictment and not exclusion of a statement he made during the period before he was brought before a magistrate. The court did not mention that the prejudice the defendant suffered by the Rule 5(a) violation was minimal since he still would have been in prison but for the Rule 5(a) violation. Rather, the Ninth Circuit rested its analysis on the fact that the only remedy for a Rule 5(a) violation was exclusion of evidence. In other words, the Ninth Circuit found that the only remedy provided by Rule 5(a) is evidentiary suppression, not dismissal of an indictment. *Id.* at 70–71. Since there was no evidence to exclude, the court denied the *Bayless* defendant's motion to dismiss the indictment on the basis of the Rule 5(a) violation.

Therefore, we are faced with the inquiry of whether Rule 5(a) provides a substantive right, in addition to providing a procedural/evidentiary right, whose remedy is dismissal. The record in this case does not show that Defendant made any statement before his arraignment which he wishes to suppress. Evidentiary exclusion, the typical remedy for a Rule 5(a) violation, is thus not an option here, just as it was not an option in *Bayless*. However, unlike the defendant in *Bayless*, Defendant here remained incarcerated for sixteen days when he might have been freed on bail had he been brought before a magistrate in a timely fashion. While there is no statement to exclude, Defendant did suffer the prejudice of sixteen days of incarceration as a result of the Rule 5(a) violation. Defendant maintains that the proper remedy for this is dismissal of the indictment.

We have found only one court which ruled that Rule 5(a) creates a substantive right, a violation of which requires dismissal of the indictment. INS officials arrested the defendant in *United States v. Osunde*, 638 F.Supp. 171 (N.D.Cal.1986), for falsely representing himself to be a U.S. citizen and for falsifying a material fact on a passport application. The government held the defendant in federal custody for 106 days before he was brought before either a judicial or administrative officer. The defendant in *Osunde* moved to dismiss the indictment because of, in part, the 106–day delay between his arrest and arraignment.

The district court stated that despite the lack of case law viewing Rule 5(a) as a substantive right in addition to an evidentiary/procedural tool, the plain language of Rule 5(a) indicated that it was a substantive right. The court reasoned that,

> [i]n light of the fact that the statute contains no reference to suppression of statement ... this Court reads the statute to require exactly that which it expressly mandates; that the arrested person be taken before a judicial officer without unnecessary delay ... [T]his Court now holds that Rule 5(a) grants arrested persons a specific substantive right....

*Id.* at 176. The court concluded that the remedial sanction of dismissal may be proper for "*flagrant* unnecessary delays in bringing an arrested person before a magistrate." *Id.* at 176 (emphasis provided);[4] *see also United States v. Egan*, 501 F.Supp. 1252, 1263 (S.D.N.Y.1980) (suppressing statements because of unnecessary delay in appearance before magistrate, but finding dismissal of indictment not warranted unless delay "rises to the level of outrageous conduct which shocks the conscience"); *United States v. Jernigan*, 582 F.2d 1211, 1214 (9th Cir.1978) (stating in *dicta* that while it might be an

---

**4.** In an alternative analysis, the *Osunde* court found a 118–day detention between the defendant's arrest and indictment also warranted

dismissal of the indictment as a violation of the Speedy Trial Act, 18 U.S.C. § 3161(b).

appropriate remedy in certain circumstances, dismissal of the indictment would be too drastic a remedy where only three days had passed before defendant appeared before a magistrate). *But see United States v. DiGregorio*, 795 F.Supp. 630, 634 n. 13 (S.D.N.Y.1992) (stating that the conclusion in *Osunde* was based on "sparse reasoning" and was "against the weight of authority in [the Second] Circuit and elsewhere").

Despite the scant case law on the subject, we find that a violation of Rule 5(a) may require dismissal of the indictment under the limited circumstances where (1) evidentiary suppression of a statement is not a potential remedy because there is no statement to suppress, *see, e.g., Bayless;* (2) the defendant was incarcerated solely as a result of the Rule 5(a) violation and likely would not have been incarcerated otherwise, *see id.;* and (3) the delay in bringing the defendant before the magistrate was egregiously lengthy. *See Osunde; Egan; Jernigan, supra.*

■ We find that the officers violated Rule 5(a) by bringing Defendant before a magistrate after unnecessary delay. To determine whether dismissal of the indictment is the proper remedy, we look to the above three factors. First, because there is no statement to suppress, an evidentiary ruling is obviously not a viable remedy.

Second, like the defendant in *Bayless,* who did not suffer prejudice since he definitely was going to remain incarcerated whether or not he had a speedy arraignment, Defendant here suffered little prejudice because of the very slim odds that he would have been released on bail had he properly been arraigned after his arrest. It strains credulity to surmise that a judge or magistrate would have granted Defendant, an illegal alien arrested for the crime of reentry, bail. The risk of flight for an illegal alien charged with reentry is enormous. No reasonable court would release this Defendant on bail. *See, e.g., United States v. Warwar,* 57 F.R.D. 645, 648 (D.P.R.1972) (denying bail pending appeal

because, inter alia, possibility of flight was real and apparent since defendant was an alien without any ties to the community), *aff'd,* 478 F.2d 1183 (1st Cir.1973). In other words, it is outlandish to assert that Defendant would have been released on bail and not have remained incarcerated for sixteen days but for the Rule 5(a) violation.

The Pretrial Services Report is additional evidence which demonstrates the unlikelihood of Defendant's release on bail. The Report, assessing the risk of Defendant's flight and the potential danger he presented to the community, concluded that Defendant's particular criminal history, in addition to his close ties to the Dominican Republic, advised that Defendant not be released on bail. The report states:

> Before this Court is a 41 year old Dominican national who has familial ties in this district and in the Continental United States. However, the defendant also has some ties to his native country. Moreover, the defendant, who has used several aliases, was previously deported as an Aggravated Felon, and has a history of warrants being issued for his arrest. Considering the previously noted, and the nature and circumstances of the instant offense, Mr. Meléndez is viewed to pose a significant risk of flight/nonappearance.

> The defendant has numerous drug-related convictions. In addition, his arrest history exhibits violent/aggressive behavior. Considering the aforementioned, he is viewed to pose a danger to the community, if released.

*See Pretrial Services Report, p. 4.* Since the likelihood of his release on bail was so remote, we find the potential prejudice to Defendant by the Rule 5(a) violation was *de minimus.*

Thus, the decisive question here is whether a sixteen-day delay is so egregiously lengthy that it warrants dismissal of the indictment. We look to the United States Code for guidance. 18 U.S.C.

§ 3142(d) [5] provides that if a judicial officer determines that an individual is an alien and a flight risk, he may order that individual detained up to ten days, excluding Saturdays, Sundays, and holidays. In other words, an alien who was a flight risk [6] could be detained, without being arraigned or charged, for potentially seventeen days.[7] While Defendant here was not detained pursuant to section 3142 and no judicial officer made the requisite determinations under section 3142 that he was both an alien and a flight risk, this statute, nevertheless, aids our analysis in that it reflects the fact that Congress does not consider it per se unreasonable to detain an individual who is an alien and a flight risk for as long as seventeen days without an arraignment or indictment. Congress essentially provided that a fifteen-day delay in arraignment may be justified under these limited circumstances. Accordingly, we do not find the sixteen-day delay here to be so outrageous as to warrant the drastic remedy of dismissal of the indictment.

## IV.

In light of the forgoing, Defendant's motion to dismiss the indictment is **DENIED.**

**IT IS SO ORDERED.**

---

5. Section 3142(d) provides, in relevant part:
   (d) Temporary detention to permit revocation of conditional release, deportation, or exclusion.—If the judicial officer determines that—
   (1) such person—
   (B) is not a citizen of the United States ... *and*
   (2) the person may flee ... Such judicial officer shall order the detention of the person, for a period of not more than ten days, *excluding Saturdays, Sundays, and holidays*....
   18 U.S.C. § 3142(d) (emphasis added).

6. As mentioned earlier, we consider an illegal alien, particularly one charged with reentry, to be an inherent flight risk.

7. We calculate a potential maximum of seventeen days using a hypothetical defendant arrested on a Saturday on the first of the month. The Saturday of his arrest and the next day, Sunday, would not count; we would begin counting on Monday, the third of the month. Monday the third through Friday the seventh would count as days one through five. Saturday the eighth and Sunday the ninth would not count. We would begin counting again on Monday the tenth. If Friday the fourteenth were a holiday, it would not count; Saturday the fifteenth would not count; and Sunday the sixteenth would not count. Finally, on Monday the seventeenth of the month, we would reach the deadline provided by § 3142.