UNITED STATES of America, Plaintiff,

v.

Viktor SAVCHENKO; Mykola Ihnatenko; Petr Shishkovsky; Mykhailo Yurchenko; Alexandre Chagovic; Anatoli Zakharov; Oleksandr Kurys; Yevgen Kurys; Volodymyr Chapny; Pavel Rymarev; Defendants.

No. 01mg1247.

United States District Court,
S.D. California.

May 18, 2001.

**504**

William Gallo, AUSA, San Diego, CA, for plaintiff.

Sheila O'Connor, San Diego, CA, for defendants.

### Order Denying Defendants' Motions to Dismiss For Lack of Jurisdiction and For Violation of Fed.R.Crim.P. 5

BATTAGLIA, United States Magistrate Judge.

On April 28, 2001, a United States Navy ship on routine patrol 500 nautical miles off the coast of Acapulco, Mexico, conducted a boarding of a Belizian fishing vessel, the "SVESDA MARU". A search of the vessel led to the discovery of approximately 12 metric tons of cocaine. Pursuant to a bilateral treaty with Belize, and with express permission of the government of Belize, the vessel was seized. The ten crewmen, Defendants herein, were detained and transported to San Diego, California. The Defendants arrived in San Diego on Saturday, May 12, 2001 and were arrested by the DEA for violation of 46 U.S.Code App. § 1903(a), (c)(1)(C), (f) and (j) on that date. Section 1903(a) provides, in part, "it is unlawful for any person on board a vessel ... subject to the jurisdiction of the United States ... to knowingly or intentionally manufacture or distribute, or to possess with the intent to manufacture or distribute, a controlled substance."

A probable cause determination based upon a sworn statement of facts was signed by United States Magistrate Judge Anthony J. Battaglia on Sunday, May 13, 2001 at 7:25 p.m. On Monday, May 14, 2001, a Complaint and Statement of Facts were filed with the United States District Court for the Southern District of California charging the Defendants as aforesaid.

An initial appearance proceeded pursuant to Rule 5 of the Federal Rules of Criminal Procedure on May 14, 2001. At the time of the initial appearance, Defendants, through counsel, Sheila O'Connor, Esq., moved to dismiss the case for lack of jurisdiction and pursuant to a violation of Rule 5 citing a 16 day delay between the apprehension at sea and the appearance in court in San Diego, California.

For the reasons set forth below, the Court denies the motions without prejudice. The Court finds that jurisdiction over the subject matter and the defendants is proper in this action and that the delay in presentment to a magistrate judge was reasonable given the time it took to transport the Defendants to the nearest United States judicial officer and based upon the fact that dismissal is not an appropriate remedy for violation of Rule 5. The remedy for a Rule 5 violation is the suppression of statements during an unreasonable period of pre-appearance detention by federal law enforcement officers.

### 1. *Jurisdiction.*

■ The term "jurisdiction" refers to the Court's power to hear and determine a matter in controversy and to render a binding decision thereon. *See Binderup v. Pathe Exchange, Inc.,* 263 U.S. 291, 44 S.Ct. 96, 68

L.Ed. 308 (1923); *Lockerty v. Phillips,* 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943). The jurisdiction of the federal courts is not derived from common law, but comes from the Constitution and laws of the United States. *See United States v. Cruikshank,* 92 U.S. 542, 23 L.Ed. 588 (1875). The United States Supreme Court derives its jurisdiction from the Constitution and the lower federal courts have no jurisdiction except as conferred by Acts of Congress. *See Kline v. Burke Constr. Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); *Lockerty v. Phillips,* 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943).

Congress has enacted the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.Code App. § 1901, *et seq.* The MDLEA provides the federal court with jurisdiction to prosecute persons on board a vessel, subject to the jurisdiction of the United States, for the manufacture, distribution or possession with intent to manufacture or distribute controlled substances on vessels. The scope of jurisdiction designed by Congress extends, *inter alia,* to a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of the United States law by the United States, 46 U.S.Code App. § 1903(c)(1)(C). The constitutionality of the MDLEA under due process and separation of power analyses has been validated by the courts. *See United States v. Caicedo,* 47 F.3d 370 (9th Cir.1995); *United States v. Khan,* 35 F.3d 426 (9th Cir.1994); *United States v. Rojas,* 53 F.3d 1212 (11th Cir.), *cert. denied,* 516 U.S. 976, 116 S.Ct. 478, 133 L.Ed.2d 407 (1995).

Congress has the power, consistent with international law and due process, to extend its criminal narcotics laws to vessels on the high seas, even absent proof intent to distribute narcotics in the United States. *United States v. Stuart–Caballero,* 686 F.2d 890 (11th Cir.1982), *cert. denied,* 459 U.S. 1209, 103 S.Ct. 1202, 75 L.Ed.2d 444 (1983). Congress has exercised that power under the MDLEA. *See United States v. Howard–Arias,* 679 F.2d 363 (4th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982). The United States similarly has jurisdiction over nonresident crew under the MDLEA. *United States v. Fuentes,* 877 F.2d 895 (11th Cir.1989), *cert. denied, Marquez–Rodriguez v. United States,* 493 U.S. 943, 110 S.Ct. 347, 107 L.Ed.2d 335 (1989). In this case, the sworn statement of the arresting agent verifies the treaty obligation with the country of Belize and the express permission of the Government of Belize to the seizure of the vessel "SVESDA MARU and its crew." Based thereon and consistent with § 1903(c)(1)(C), the Court finds that jurisdiction over this case and these defendants is appropriate.

Under the MDLEA, venue lies in the district court at the point of entry where the subject persons entered the United States. *See* 46 U.S.App. § 1903(f). Here, the vessel traveled from the high seas to the port of San Diego, within the jurisdiction of this Court and venue is proper.

### 2. *Procedural Protections Following Arrest.*

There are two protections under federal law afforded to defendants following an arrest without a warrant by federal officers. The first is the filing of a complaint supported by probable cause and the second is the initial appearance, pursuant to Fed. R.Crim.P. 5, before the nearest available magistrate judge "without unnecessary delay." *See United States v. Murray,* 197 F.R.D. 421 (S.D.Cal.2000).

Here the Defendants allege unnecessary delay in their presentment to a magistrate judge due to the 16 days that passed from their apprehension on the high seas to their first appearance in district court. Based upon the alleged violation, the Defendants seek dismissal of current charges as a remedy. Defendants' motions raises the issues of whether the delay in this case was necessary or not and, if unnecessary, the appropriate remedy for the violation of the statute.

### A. *Required Timing For The Rule 5(a) Hearing.*

The requirements and timing for the initial appearance are set out in Fed.R.Crim.P. 5. The proceeding is to occur "without unneces-

sary delay." What constitutes unnecessary[1] delay is to be determined in light of all of the facts and circumstances of the case.[2]

 The purpose of Rule 5(a) is to prevent federal law enforcement from using the time between an arrest and presentment before a magistrate judge to procure a confession[3]. Some delay is inevitable in a variety of circumstances in federal criminal cases. This is particularly true in light of the wide expanses of territory covered by district courts and the logistics associated with the transport, remand and booking of federal prisoners. Delay for purposes of transportation of the defendant[4], jurisdictional determinations[5], availability of the magistrate judge[6], medical care or the intoxicated state of the defendant[7] are all legitimate and necessary (hence reasonable) delays and are not in violation of the Rule 5 requirement of promptness.

 In this case, transportation from the high seas to the District Court in San Diego was reasonable. Following arrival in the Southern District of California on Saturday, May 12, 2001, the arresting agency presented a probable cause statement to support the arrest within 48 hours. This probable cause determination, pursuant to *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), satisfies the Fourth Amendment requirement of a prompt judicial determination of probable cause as a pre-requisite to ex-

tended restraint of liberty following arrest. The Defendants were then presented to a magistrate judge on the following day, the first court day following arrest. At the initial appearance the requirements of Rule 5 were satisfied, counsel was appointed, and further proceedings set. Whereas 16 days might be deemed unreasonable for the delay in a first appearance concerning an arrest at the International Border with Mexico, some 16 miles south of the courthouse, the 16 days is more than reasonable for the transport of the fishing vessel from the high seas approximately 500 nautical miles from Mexico to this district under these facts and circumstances.

**B. *The Appropriate Remedy.***

 The appropriate remedy for a violation of the "without unnecessary delay" standard of Rule 5 is the suppression of any prejudicial statements provided by the accused during the subject period. *See United States v. DiGregorio*, 795 F.Supp. 630 (S.D.N.Y.1992). This fact is also clear by reference to the cases which have considered this issue. All but three of the cases cited herein arise under the context of the issue being presented at a suppression hearing, as opposed to a motion to dismiss[8]. While some cases suggest that there are circumstances of abuse or misuse of the process that may lead to pre-indictment dismissal of the charges[9], standing alone, the matter of

---

1. Cases often use the words unnecessary, unreasonable and undue interchangeably in this context.

2. *See* Notes of Advisory Committee on Rules to Rule 5.

3. *See Mallory v. United States*, 354 U.S. 449, 452–53, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) (citing *McNabb v. United States*, 318 U.S. 332, 343–44, 63 S.Ct. 608, 87 L.Ed. 819 (1943)). The *McNabb/Mallory* rule was superseded in 1968 by the enactment of 18 U.S.C. § 3501. *See United States v. Manuel*, 706 F.2d 908, 912–13 (9th Cir.1983).

4. *See United States v. Wilson*, 838 F.2d 1081, 1085 (9th Cir.1998).

5. *See Shane v. United States*, 367 F.2d 285 (9th Cir.1966) *cert. denied*, 387 U.S. 946, 87 S.Ct. 2080, 18 L.Ed.2d 1333 (1967).

6. *See United States v. Van Poyck*, 77 F.3d 285, 289 (9th Cir.) *cert. denied*, 519 U.S. 912, 117 S.Ct. 276, 136 L.Ed.2d 199 (1996).

7. *See United States v. Isom*, 588 F.2d 858, 862 (2d Cir.1978); *United States v. Manuel*, 706 F.2d 908, 914 (9th Cir.1983); *United States v. Haskins*, 536 F.2d 775, 778 (8th Cir.1976); *United States v. Christopher*, 956 F.2d 536, 539 (6th Cir.1991).

8. It is also important to note, that the proper time to object to the failure to bring the accused before a magistrate judge without unreasonable delay is at the time when the government offers into evidence the fruits of an illegal detention. *See United States v. Miller*, 293 F.2d 697, 698 (2d Cir.1961).

9. *See United States v. Jernigan*, 582 F.2d 1211 (9th Cir.1978); *United States v. Egan*, 501 F.Supp. 1252 (S.D.N.Y.1980). *Jernigan* dealt more specifically with a delay in executing a warrant at a time when the arresting agent knew initial appearance would be delayed by a weekend. *Egan*, examining the reasonableness of a four day delay, states, without citation, "although the delay in this case may have been longer than necessary, it certainly does not rise to the level of

delay in presentment of a defendant to a magistrate judge following arrest is not, in and of itself, sufficient. To obtain dismissal for some government misconduct, including pre-indictment delay, there must be a showing of "outrageous conduct" which violates the defendant's due process rights under the Fifth Amendment, or a violation of some other substantive right such as the Speedy Trial Act. *See DiGregorio*, 795 F.Supp. at 634 (citing *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)).

In *DiGregorio*, the defendant was arrested, and after several days of interrogation, was asked to sign a "waiver of arraignment" form. He kept in touch with the arresting agents over the months that followed and did not appear before a judicial officer for five months following the arrest. The court denied the motion to dismiss on the grounds of a Rule 5(a) violation. The court then turned its focus on the Fifth Amendment remedy for "outrageous conduct" and the issue of violation of the Speedy Trial Act [18 U.S.C. § 3161(b) ]requirement that an indictment must be filed within thirty days of arrest. Ultimately, the court ordered an evidentiary hearing on the Speedy Trial Act and prosecutorial misconduct claims.

The basis for the Fifth Amendment violation was the *Russell* case, cited above, where the U.S. Supreme Court stated, "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Russell*, 411 U.S. at 431–32, 93 S.Ct. 1637. Building upon *Russell*, the courts have indicated that the showing of outrageousness must be of conduct rising to the level of "violating that 'fundamental fairness' shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 432, 93 S.Ct. 1637. Outrageousness in a constitutional sense is not established merely by showing obnoxious police behavior or even flagrant misconduct. *See United States v. Kelly*, 707 F.2d 1460, 1461 (D.C.Cir.1983).

outrageous conduct which shocks the con-

The principle that Rule 5 does not create a substantive right for which violation warrants dismissal has been the subject of much comment in the Ninth Circuit. The lead case in the Ninth Circuit is *Bayless v. United States*, 381 F.2d 67 (9th Cir.1967). In *Bayless*, the defendant was recaptured following an escape from prison. The recapture occurred on November 13, 1965. He was never taken before a federal judge pursuant to Rule 5. On March 9, 1966, almost four months after recapture, he was indicted on felony charges including escape. Bayless' motion to dismiss for a Rule 5 violation was denied. The court noted that the only remedy for the violation would be the suppression of confessions or statements. *Bayless*, 381 F.2d at 70–71.

Only *United States v. Osunde*, 638 F.Supp. 171 (N.D.Cal.1986), has run contrary in the Ninth Circuit. In *Osunde*, 106 days passed between defendants arrest and first appearance before a magistrate judge under Rule 5, and 118 more days passed before an indictment was returned. Defendant moved for dismissal under the Speedy Trial Act and Rule 5. While noting that the "Court has discovered no cases in which Rule 5(a) is viewed as a substantive right rather than a procedural/evidentiary tool" the court ordered dismissal of the case. *Osunde*, 638 F.Supp. at 176. The 1992 *DiGregorio* decision examined the *Osunde* case, and expressed the opinion that it was based on "sparse reasoning." A careful look at the *Osunde* case confirms this characterization.

Without citing any cases, except *United States v. Jernigan*, 582 F.2d 1211 (9th Cir. 1978), *Osunde* analogized the remedy associated with the violation of Rule 9(c)(1) concerning persons arrested with a warrant. *Osunde*, 638 F.Supp. at 176. Rule 9 directs the court to proceed in accordance with Rule 5 after arrest, and mirrors the language concerning an appearance without unnecessary delay. Like Rule 5, Rule 9 is silent as to remedy, but a similar evidentiary remedy has been used. *See United States v. Perez–Torribio*, 987 F.Supp. 245, 247 (S.D.N.Y.1997). From the Notes of Advisory Committee on Rules, it is clear that Rule 9(c) was intended to conform Rule 9 with Rule 5 by virtue of its

scious." 501 F.Supp. at 1263.

1982 amendment. Rule 5 itself declares its applicability to arrests with or without a warrant.[10] The courts have routinely held that Rule 5 bears equally on officers whether the arrest is with or without a warrant. *United States v. Duvall,* 537 F.2d 15, 22 (2d Cir.) *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

The *Jernigan* case also lends little support to this argument that violations of the delay standards of Rules 5 and 9 warrant dismissal. *Jernigan* focused on an agent's purposeful delay in executing a warrant so that the defendant's arrest took place on a Friday. This led to defendant's incarceration over a three day weekend before the Rule 5 appearance could proceed. No statements were taken from the defendant prior to his initial appearance. The defendant moved to vacate his later conviction and dismiss the indictment against him under Rules 5 and 9. While finding the government's conduct deplorable, the court found dismissal too drastic a remedy where no prejudice occurred other than spending three days in jail. *Jernigan,* 582 F.2d at 1214. Just because the court considered the defendant's motion, and failed to rule out dismissal as an available remedy in the first place, should not be perceived as support that dismissal would be the appropriate remedy under any circumstances.

It is also notable that the *Osunde* court first discussed the case as a violation of the Speedy Trial Act, 18 U.S.C. § 3161(b). There is no question that dismissal was the appropriate sanction for the delay from arrest to indictment. Interestingly, *Osunde* fails to recognize the 1967 Ninth Circuit *Bayless* decision as authority, or even mention it for that matter.

One other court has also suggested the prospect of a substantive right accruing under Rule 5. In *United States v. Melendez,* 55 F.Supp.2d 104 (D.Puerto Rico 1999), the court states:

> *Despite the scant case law on the subject,* we find that a violation of Rule 5(a) may require dismissal of the indictment under the limited circumstances where (1) evidentiary suppression of a statement is not a potential remedy because there is no statement to suppress; (2) the defendant was incarcerated solely as a result of the Rule 5 violation and likely would not have been incarcerated otherwise; and (3) the delay in bringing the defendant before the magistrate was egregiously lengthy.

*Id.* at 108 (emphasis added) (citations omitted). While *Melendez* references the *Osunde* position that the "plain language" of Rule 5(a) indicates a substantive right, it is important to keep in mind that the Rules Enabling Act (28 U.S.C. § 2071) empowered the Supreme Court to make rules of procedures. Specifically, § 2072(b) states, "such rule shall not abridge, enlarge or modify any substantive right." This limitation is a generally accepted concept in federal jurisprudence. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). This point underscores the "sparse reasoning" upon which *Osunde* and *Melendez* are based.

The court in *Melendez* dealt with a defendant who was in custody for sixteen days before his initial appearance in court. In ultimately finding that the sixteen day delay was not sufficiently outrageous to justify dismissal, the court seems troubled that "since there is no statement to suppress, an evidentiary ruling is obviously not a viable remedy." In relying upon an evaluation of "outrageousness," the court is really assessing the Fifth Amendment remedy spelled out in *Russell,* under the guise of a Rule 5 analysis. There is no need to infer any further remedial impact to Rule 5 than its drafters intended. Where no statement is elicited, no remedy is necessary. Put in sporting terms, "no harm, no foul". Rule 5 was not intended to redress all harms resulting from delay. Its focus is to prevent the harm of a coerced statement due to purposeful delay. Other harms resulting from delay are adequately and properly addressed by the Fifth Amendment and the Speedy Trial Act.

---

**10.** Prior to the enactment of Rule 5 in 1944, various statutes used various standards to define the requisite timing for presentment before a federal judge following arrest. Rule 5 and it's "unnecessary delay" brought uniformity by superseding all prior provisions. The 1992 amendment to Rule 9(c) was consistent with this premise.

### Conclusion

In the final analysis, Rule 5 is one part of an arsenal of rights that a defendant holds to deal with delay. It is not a general remedial statute, but rather a rule designed to deal with a particular problem by applying an evidentiary sanction. Where government delay or outrageous conduct leads to a request for a dismissal, a basis beyond Rule 5 must be used if defendant truly hopes to succeed. The Due Process Clause of the U.S. Constitution and the Acts of Congress stated herein are well designed to address those circumstances. In this case, even if the delay in transport of the defendants from the high seas to the district court were found unnecessary or unreasonable, those facts alone would not justify dismissal since that is not a sanction available under Rule 5. Under the facts and circumstances in this case, the Court cannot find any indication of outrageous conduct to justify consideration of dismissal based upon a violation of the Fifth Amendment.

For the foregoing reasons, Defendants' Motions to Dismiss For Lack of Jurisdiction and Violation of Rule 5 are denied.

IT IS SO ORDERED.